**Richmond**

# DAVID J. MCCUTCHEON

## v.

# COMMONWEALTH OF VIRGINIA

September 9, 1982.

Record No. 811716.

Present: All the Justices.

*Lawrence W. Fary (Walton G. Bondurant, Jr.,* on brief), for appellant.

*J. Steven Sheppard, III, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

Code § 18.2-258.1(A)(iv) provides that it shall be unlawful for any person to obtain or attempt to obtain any drug "by the use of a false name."*The defendant, David J. McCutcheon, was convicted under this provision and sentenced to three years' imprisonment. The principal question in the case is whether the statute requires the Commonwealth to show a causal relationship between the use of a false name and the procurement of a drug.

The record shows that sometime prior to January 15, 1980, the defendant was injured in an automobile accident. He was treated for "broken bones" by a Dr. Durica, who sent him to Dr. Robert Swan for treatment of "some neurological damage." The defendant identified himself to Dr. Swan, not by his true name, but as Jimmy David Johnson. Dr. Swan treated the defendant throughout 1980, giving him several prescriptions for Dilaudid, a pain killer.

Becoming suspicious of the defendant, Dr. Swan called the police. On September 4, 1980, the defendant, still posing as Johnson, visited Dr. Swan and secured from him a prescription for Dilaudid. Police officers observed the defendant as he left the doctor's office, drove to a pharmacy, and had the prescription filled. When he exited the pharmacy, the officers stopped him, advised him he was under investigation, and asked him what was in the pill bottle. The defendant "took [the bottle] out" and said: "I didn't know I broke the law. I did use a false name." He was then placed under arrest and charged with obtaining the Dilaudid by the use of a false name.

Testifying below, Dr. Swan acknowledged that Dilaudid was "a proper drug to prescribe" for treatment of the defendant's symptoms. The doctor also conceded "it didn't matter" that the defendant had given him a false name; he had not been "tricked or in any way induced" to prescribe the drug for the defendant. Dr.

---

* The Code section also makes it unlawful to obtain or attempt to obtain drugs by "the giving of a false address." Because this case involves only the use of a false name, we will not again mention the false address aspect of the statute.

Swan added that, even after the incident of September 4, 1980, when he learned the defendant's real name, he continued to prescribe Dilaudid in treating the defendant because "it was still a proper drug . . . under the circumstances."

The defendant contends that the evidence was insufficient to support his conviction. He argues that the Commonwealth had the burden of proving Dr. Swan would not have issued the September 4 prescription but for the use of a false name. The Commonwealth failed in this burden, the defendant maintains; indeed, Dr. Swan admitted that he had not been tricked into issuing the prescription and that, because the defendant needed the drug, he would have prescribed Dilaudid even had he known about the use of a false name.

On the other hand, the Attorney General contends that the Commonwealth was not required to prove a causative connection between the defendant's use of a false name and Dr. Swan's issuance of the prescription. Under Code § 18.2-258.1(A)(iv), the Attorney General asserts, the Commonwealth establishes a violation when it shows the accused obtained a controlled substance "while using a false name." The Commonwealth proved this violation, the Attorney General submits, and it is irrelevant whether Dr. Swan relied upon the false name or whether use of the name motivated the doctor's issuance of the prescription.

We agree with the Attorney General. In our opinion, the purpose of Code § 18.2-258.1(A)(iv) is not to protect physicians and pharmacists from fraud or deceit in their issuance and filling of prescriptions, although this protection may be an incidential result of the statute's enforcement. Rather, the statute's purpose, we believe, is to aid in curbing the excessive use of drugs and the obtaining of drugs unlawfully. This has been held the purpose of similar statutes. *E.g., State* v. *St. John*, 544 S.W.2d 5, 8 (Mo. 1976); *State* v. *Lee*, 62 Wash. 2d 228, 233, 382 P.2d 491, 494 (1963).

Code § 18.2-258.1(A)(iv) is included in Article 1, Chapter 7 of Title 18.2. Article 1 contains a series of sections relating to all facets of illegal drug traffic, including possession, sale, and distribution. Several of these Code sections, including § 18.2-258.1, refer specifically to the Drug Control Act, Code §§ 54-524.1 *et seq.* Section 54-524.56(b1), a part of that Act, imposes upon each person selling, administering, or dispensing drugs the duty of recording the name and address of the person to whom or

for whose use a drug is sold, administered, or dispensed, together with the kind and quantity of the drug involved. These records must be maintained "completely and accurately" for a period of two years, Code § 54-524.56(e), and they shall be open for inspection by agents of the State Board of Pharmacy, Code § 54-524.57, who may divulge their knowledge of the records in connection with a prosecution or proceeding involving the person to whom the records relate. Code § 54-524.58.

When we examine these provisions of the Drug Control Act, we find that the General Assembly has established a system of record-keeping designed to reflect the identity of all persons to whom controlled drugs are sold, administered, or dispensed. These records, the Act states, shall be complete and accurate and, as the Act permits, their contents may be divulged for law-enforcement purposes.

We believe that, in determining legislative intent, Code § 18.2-258.1(A)(iv) and the Act should be read together. This reading reveals the intent to insure the accuracy and completeness of drug-control records and to aid their law-enforcement role by penalizing the use of a false name in obtaining or attempting to obtain a controlled drug.

This legislative intent would be subverted, in our opinion, by requiring the Commonwealth to prove that a prescription would not have been written or filled but for the use of a false name. The adoption of this requirement would render Code § 18.2-258.1(A)(iv) virtually inoperative against a person "with a seemingly legitimate complaint" who is wont to use "a different name . . . in any number of physicians' offices [or] pharmacies" in an effort to obtain a supply of drugs. *State* v. *Lee*, 62 Wash. 2d at 233, 382 P.2d at 494.

Such a person is an obvious target of the statute's focus. Application of a "but for" rule, however, would place the statute's emphasis upon a physician's or pharmacist's motivation to write or fill a prescription. Where, as here, the doctor's motivation is to heal the sick, the user of a false name would go unpunished. We believe that the emphasis should be placed where it was intended, *viz.*, upon the motivation of the person using a false name, and that the inquiry should be whether the motivation is culpable or innocent.

■ In our view of Code § 18.2-258.1(A)(iv), when the Commonwealth shows that the accused has used a false name in ob-

taining or attempting to obtain a drug, a prima facie violation is established. The burden then shifts to the accused to go forward with evidence showing that his motivation to use a false name was innocent.

This record shows the nature of the defendant's motivation. He testified that he gave Dr. Swan a false name "to get the drugs" and that he "needed the drugs for pain." He said he was "embarrassed to use [his] real name" because his brother was a "junkie" and abused drugs and he was "ashamed of him." From these statements, the trial court could have inferred that the McCutcheon name was well known on the local drug scene and that the defendant feared he would not have gotten drugs from Dr. Swan under his real name.

The defendant contends also that, unless we place a "but for" interpretation upon Code § 18.2-258.1(A)(iv), the statute would be unconstitutionally vague. We disagree. A statute passes constitutional muster if it specifies "with reasonable certainty and definiteness the conduct which is commanded or prohibited . . . so that a person of ordinary intelligence may know what is thereby required of him." *Caldwell* v. *Commonwealth*, 198 Va. 454, 458, 94 S.E.2d 537, 540 (1956). We believe that the Code section in question passes this test; it tells any person of ordinary intelligence not to use a false name when he obtains or attempts to obtain drugs.

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*