## Richmond

SHARON ANN PANCOAST

v.

COMMONWEALTH OF VIRGINIA

No. 0060-85

Decided March 4, 1986

COUNSEL

Craig S. Cooley (Brown and Cooley, on brief), for appellant.

Leah Ann Darron, Assistant Attorney General (Gerald L. Baliles, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—Sharon Ann Pancoast, appellant, was convicted, in a bench trial, of two counts of unlawfully and feloniously obtaining a drug by fraud, deceit, misrepresentation and use of a forged prescription in violation of Code § 18.2-258.1(A).[1] She was sentenced to four years, all suspended, for one count. Imposition of sentence was suspended on the second count.

The issues we are asked to decide are (1) whether the evidence of intent was sufficient to support a conviction for violation of Code § 18.2-258.1(A) and (2) whether the court erred in ruling that Code §§ 18.2-260 and 54-525.65 do not constitute a lesser included offense of Code § 18.2-258.1. We find that the evidence was sufficient to convict appellant under the felony statute. For this reason, we do not reach the issue of a lesser included offense.

---

[1] § 18.2-258.1. *Obtaining drugs, procuring administration of controlled substances, etc., by fraud, deceit or forgery.* — A. It shall be unlawful for any person to obtain or attempt to obtain any drug or procure or attempt to procure the administration of any controlled substance or marijuana: (i) by fraud, deceit, misrepresentation or subterfuge; or (ii) by the forgery or alteration of a prescription or of any written order; or (iii) by the concealment of a material fact; or (iv) by the use of a false name or the giving of a false address.

I.

The events which led to these convictions took place in September and October of 1983. At that time, appellant was an intern at the Medical College of Virginia. She was licensed to practice medicine in Louisiana, but not in Virginia. Her husband, Paul Pancoast, was a pharmacist licensed in both Virginia and Louisiana. It is undisputed that Mr. Pancoast was addicted to drugs during this time and that he frequently pressured appellant to write prescriptions for him.

Two prescriptions form the basis of these convictions. One was written on September 19, 1983, and the other on October 7, 1983. Appellant admits that both prescriptions were either filled in or signed by her to enable her husband to obtain controlled drugs. She also admits that the prescriptions were made out to fictitious patients, that false DEA identification numbers were used, and that she had no authority to write these prescriptions. Appellant knew that what she was doing was improper; however, she defended her actions on the ground of common law duress. Under appellant's theory, there was no felonious intent in her admittedly illegal actions because of the pressure from her husband to write the prescriptions.

Paul Pancoast, testifying in his wife's behalf, admitted to having pressured her into writing prescriptions for him. He testified that he used various forms of mental and physical abuse to pressure the appellant. His actions including denying appellant sleep after she got home from long shifts at the hospital, throwing things, threatening to do "something crazy" and on occasion, hitting her. He did not specifically recall threatening appellant with death, though he acknowledged that he may have said, "I will kill you."

Appellant also testified regarding the circumstances leading up to her writing of the prescriptions. She stated that the September prescription was written after she arrived home feeling tired and found her husband "pretty frantic." He had no drugs left and asked her to write a prescription. She said that she initially refused, but that he persisted. Having had no sleep for two days, appellant stated that she was exhausted and around midnight, she relented and wrote the prescription. She said that, although her

husband had frequently asked her to write prescriptions and that she was normally strong enough to resist him, on this occasion she was not.

Appellant further testified that on October 7, 1983, appellant again came home, and found her husband out of drugs. She said that he wanted her to accompany him to a drug store "so that things look real." When she refused, he hit her and threatened to do so again if she did not go with him. Appellant stated that he had slapped her before, but that she was afraid on this occasion because her husband also had punched her in the stomach.

Paul Pancoast confirmed that he slapped appellant on this occasion, although he denied punching her. He said that he took appellant by the arm to their car and drove them to the drug store. Once there, appellant filled out a prescription for Percodan while her husband walked up and down aisles within thirty feet of her. She did not attempt to inform the pharmacist that she was writing a false prescription because she was afraid of her husband.

Appellant testified that she would never have written the prescriptions had it not been for the pressure from her husband. According to appellant, her husband had threatened her with death. She did not report him because she was afraid of losing her job. Appellant also stated that she did not leave her husband because she had no place to go and she was afraid that he might do something violent to someone else.

Dr. Mark Gelfman, who supervised appellant at work, testified as to the strenuous nature of appellant's internship at the Medical College of Virginia. He acknowledged, however, that the interns know they are not supposed to write prescriptions for persons who are not their patients, or to use fictitious DEA numbers. Dr. Robert L. Carithers, Jr., who also supervised appellant's work, stated that she was one of the finest interns in the program. Neither doctor indicated that appellant had any problem performing her duties during September and October of 1983.

Dr. Roy Salley, a clinical psychologist familiar with both appellant and her husband, gave testimony concerning their personality traits. His impression of appellant was that she was a "rescuer" and "a sitting duck for a master manipulator like her husband Paul." He believed Mr. Pancoast was "a moderately severe pas-

sive personality . . . who is extremely adept at manipulating." Dr. Salley did not believe that appellant was ever placed in a situation of reasonably fearing immediate death from her husband, but he believed that she might have reasonably feared serious bodily injury.

## II.

The court found appellant guilty of violating Code § 18.2-258.1(A) (i) and (ii) by unlawfully obtaining controlled substances through fraud, deceit, misrepresentation and use of a forged prescription. Appellant concedes that she knowingly signed or filled out false prescriptions to enable her husband to obtain controlled drugs. She does not seek to excuse this conduct from all criminal liability, but argues that the pressure exerted by her husband negated any felonious intent on her part.

In *McCutcheon* v. *Commonwealth*, 224 Va. 30, 294 S.E.2d 808 (1982), the court reviewed a prosecution under Code § 18.2-258.1(A) (iv) for obtaining controlled substances by use of a false name. There, it was held that the Commonwealth may establish a prima facie violation by showing that the accused has used a false name in obtaining the drug. The burden of going forward with evidence of an innocent motivation then falls on the accused. 224 Va. at 34-35, 294 S.E.2d at 811.

The same principles apply here. The Commonwealth established a prima facie case by showing that appellant made out prescriptions without authority and with fictitious patient identifications and DEA numbers to enable her husband to obtain controlled substances. The burden then fell upon the appellant to show that her motivation was innocent. This she failed to do. There is nothing in the record to indicate that appellant's actions were taken for any other purpose than to aid her husband in illegally obtaining drugs. Moreover, it is clear that the appellant participated in obtaining the drugs by fraud, deceit and misrepresentation, as charged in the indictment.

The fact that appellant did not obtain any drugs for herself and that she apparently was not present when the September 19th prescription was filled does not vitiate the felonious intent established by the Commonwealth. At most, such evidence relates to whether she was a principal in the second degree or an accessory before

the fact. However, principals in the second degree and accessories before the fact are held accountable to the same extent as principals in the first degree. Code § 18.2-18.

Having found that Pancoast participated in obtaining drugs by fraud, deceit and misrepresentation in violation of § 18.2-258.1, and that the evidence was sufficient to convict her on this basis, we need not reach the issue of whether a forgery was committed.

█ Finally, we consider appellant's alleged duress theory. The common law defense of duress excuses acts which would otherwise constitute a crime, where the defendant shows that the acts were the product of threats inducing a reasonable fear of immediate death or serious bodily injury. *United States* v. *Bailey*, 444 U.S. 394, 409 (1980). If the defendant failed to take advantage of a reasonable opportunity to escape, or of a reasonable opportunity to avoid doing the acts without being harmed, he may not rely on duress as a defense. *Bailey*, 444 U.S. at 410; *United States* v. *Gordon*, 526 F.2d 406, 407-08 (9th Cir. 1975).

Where it is properly shown, duress is a complete defense to a crime. It is not available to negate only selected elements, as urged by appellant. Such an argument misconceives the nature of the defense. As has been stated,

> The rationale of the defense is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question. Rather, it is that, even though he has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude.

W. LaFave & A. Scott, *Criminal Law* 374 (3d ed. 1983).

█ We agree with the trial court that the evidence in this case was not sufficient to establish duress. There were no threats of imminent death. Vague threats of future harm, however alarming, will not suffice to excuse criminal conduct. *United States* v. *Patrick*, 542 F.2d 381, 388 (7th Cir. 1975), *cert. denied*, 430 U.S. 931 (1977); *United States* v. *Gordon*, 526 F.2d 406, 408 (9th Cir. 1975). It is true that appellant was struck by her husband on the

evening she went with him to the pharmacy, but even if we were to conclude that the trip to the pharmacy was made under duress, we could not conclude that the writing of the prescription was also the product of duress. Her husband did not stay with her at all times while in the pharmacy, nor was he then presently threatening her. Had she so desired, she could have informed the pharmacist, in some manner, that the prescription was fraudulent. She, therefore, failed to take advantage of an alternative to criminal conduct on this occasion. That being true, she may not rely on the defense of duress. *See United States* v. *Lee*, 694 F.2d 649, 654 (11th Cir.), *cert. denied*, 460 U.S. 1086 (1983).

The evidence regarding the September 19 prescription is even less supportive of duress. On that occasion, she relented and wrote the presciption after being constantly harassed by her husband. While she may have been in great need of sleep, there is nothing in the record to indicate that she was in fear of imminent death or serious bodily harm, or that she had no alternative other than to commit an illegal act.

Finding that the evidence of intent was sufficient to sustain the convictions under Code § 18.2-258.1(A), and that appellant's criminal acts were not excused by the defense of duress, we affirm the convictions.

*Affirmed.*

Benton, J., and Barrow, J., concurred.