BENTON, Judge,
dissenting.
The standard for granting jury instructions is well established.
If there is evidence in the record to support the defendant’s theory of defense, the trial judge may not refuse to grant a proper, proffered instruction. “Furthermore, where evidence tends to sustain both the prosecution’s and the defense’s theory of the case, the trial judge is required to give requested instructions covering both theories.” When instructing the jury, the trial judge must be mindful that:
[t]he jury is not required to accept, in toto, either the theory of the Commonwealth or that of an accused. They *680 have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime.
Delacruz v. Commonwealth, 11 Va.App. 335, 338-39, 398 S.E.2d 103, 105 (1990) (citations omitted). I would hold that the trial judge erred in refusing to instruct the jury on heat of passion and affirmative defenses.
I.
“Although the Commonwealth prevailed at trial, the appropriate standard for review requires that we view the evidence with respect to the refused instruction in the light most favorable to the defendant.” Boone v. Commonwealth, 14 Va.App. 130, 131, 415 S.E.2d 250, 251 (1992). So viewed, the record contains evidence that Mark Graham went to his uncle’s residential trailer to shower and wash his clothing. When Graham was preparing to shower, his uncle, who Graham said had molested him in the past, improperly touched him. After they argued, Graham’s uncle telephoned Swanson Mullins and told him “to come ... with the guns and shoot [Graham].” Graham struggled with his uncle and ran from the trailer. As Graham ran up the hollow toward a wooded hill and away from Mullins’s residence, he saw Mullins and three other men approaching him. Graham testified that he knew he was in danger because all four men were armed with guns and because Mullins had previously threatened to kill him. He had seen Mullins and his friends beat other people, and he knew they were “enforcers.”
As Graham ran up the hollow and passed the Hashes’ trailer, he saw guns inside. Graham testified that he saw the armed men coming around the Gateses’ trailer and moving up the hill toward him “before [he] ever got in [the Hashes’] trailer.” He said that “[e]verything was happening so fast” and explained his conduct as follows:
*681 I got up to about the trailer and I don’t know why I was looking over there, but I mean I was looking over in that direction and as soon as I seen two guns hanging on the gun rack I went straight through the window and got one. I don’t remember if I loaded the gun or not before I went outside but the gun was obviously loaded. I must have checked and seen it was loaded. And I shot up in the air, one, two or three times. I ain’t for sure. I don’t remember. Warning them that I got a gun. You know, don’t come after me because I’m armed too.
Graham testified that he was afraid the men intended to shoot or hurt him and that he shot in the air because he “was wanting them to back off and not keep coming ... [toward him].” He testified that the men continued up the hill and began shooting at him. He shot at the men, telephoned 911 for help, and then called the telephone operator after he got no answer at 911. As he was asking the operator to contact the police and shooting at the men who were shooting at him, he realized that shots were also being fired from the Gateses’ trailer. He then shot at the Gateses’ trailer. When the operator told Graham that the police would arrive in ten or fifteen minutes, he had no more ammunition. Graham then ran from the trailer farther up the hollow into the woods.
When the police arrived, they saw a man behind the Gates-es’ trailer with a shotgun. That man directed the police to his friend who had been shot and who also had a shotgun. When the police learned that other armed men were around, they ordered the men to come out of the woods. Three men came from the direction of the Hashes’ trailer; they all had “long guns,” one of which was a shotgun.
The grand jury indicted Graham for the aggravated malicious wounding of Lewis Collins, the attempted malicious wounding of Donald Keene, use of a firearm in the commission of each of those felonies, shooting into an occupied dwelling, possession of a firearm by a convicted felon, statutory burglary, and grand larceny. At his jury trial, Graham was acquitted of malicious wounding, attempted malicious wounding, and *682 use of a firearm in the commission of those shootings. The jury convicted him of shooting into an occupied dwelling, statutory burglary, grand larceny, and possession of a firearm by a convicted felon.
II.
The trial judge refused to instruct the jury as follows concerning heat of passion:
Heat of passion excludes malice when the heat of passion arises from provocation that reasonably produces an emotional state of mind such as hot blood, or rage, anger, resentment, terror or fear so as to cause one to act on impulse without conscious reflection. Heat of passion must be determined from circumstances as they appeared to defendant but those circumstances must be such as would have aroused heat of passion in a reasonable person.
If a person acts upon reflection or deliberation, or after his passion has cooled or there has been a reasonable time or opportunity for cooling, then the act is not attributable to heat of passion.
The refusal was plain error because it deprived Graham of an instruction that would have put before the jury an element of his defense. “Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the 'absence of malice.” Barrett v. Commonwealth, 231 Va. 102, 106, 341 S.E.2d 190, 192 (1986) (citations omitted). As the majority notes, “[h]eat of passion” refers to “the furor brevis which renders a [person] deaf to the voice of reason.” Hannah v. Commonwealth, 153 Va. 863, 870, 149 S.E. 419, 421 (1929). Therefore, heat of passion may be “determined by the nature and degree of the provocation, and may be founded upon rage, fear, or a combination of both.” Barrett, 231 Va. at 106, 341 S.E.2d at 192 (citations omitted). Whether Graham acted maliciously or in the heat of passion, therefore, was a jury question. See id.
Graham testified that shots were being fired at him from the Gateses’ trailer and that he shot at that person in self- *683 defense. If the jury believed Graham’s testimony, it provided the basis upon which they could have concluded, if properly instructed, that Graham acted in the heat of passion when he obtained the gun from the Hashes’ trailer and returned gunfire toward the person who was shooting at him from the Gateses’ trailer.
It is clear from the jury’s verdicts that the jury accepted Graham’s claim of self-defense. The jury acquitted him of the charges of aggravated malicious wounding, attempted malicious wounding, and the use of a firearm in the commission of those offenses. Furthermore, the evidence proved the police found two armed men, one of whom had been shot, behind the Gateses’ trailer. The jury, however, acquitted Graham of charges concerning that wounding. “A plea of self defense and a claim of provoked heat of passion do not conflict with each other.” Barrett, 231 Va. at 106, 341 S.E.2d at 192. Because the evidence in the record could support a jury finding that Graham acted in the heat of passion while shooting into the trailer to defend himself, I would hold that the trial judge erred in refusing the instruction.
III.
In view of Graham’s testimony, the trial judge instructed the jury as follows concerning Graham’s affirmative defense of duress:
If you find from the evidence that the defendant acted under duress, then you must find him not guilty. In order for the defendant to use the defense of duress, you must find from the evidence that he was threatened and that he had a reasonable fear of imminent death or serious bodily injury. The defense of duress is not available if the defendant had a reasonable opportunity to escape and did not do so or had a reasonable opportunity to avoid committing the crime without being harmed.
The trial judge, however, did not inform the jury of the standard by which it was required to measure that evidence. The necessary result of this omission was to leave the jury *684 uninformed of a critical aspect of the law relating to Graham’s defense. Thus, I would also hold that the trial judge erred in refusing the following instruction that Graham tendered:
The defendant need not prove his affirmative defenses beyond a reasonable doubt, or even by a preponderance of the evidence. The defendant must only introduce evidence which, when considered with the whole evidence, creates a reasonable doubt regarding his guilt.
In its brief, the Commonwealth acknowledges “that a defendant need only sustain a plea of self-defense to* the point where the evidence in support thereof, when considered along with all other evidence produced in the case, raises a reasonable doubt in the minds of the jurors regarding the guilt of the accused.” McGhee v. Commonwealth, 219 Va. 560, 561, 248 S.E.2d 808, 809 (1978) (citation omitted). The record does not support, however, the Commonwealth’s contention that the subject of Graham’s burden was adequately covered by other instructions. Although the trial judge correctly instructed the jury that “[tjhere is no burden on the defendant to produce any evidence,” that instruction fails to inform the jury of the appropriate standard by which to weigh Graham’s defenses in relation to the Commonwealth’s ultimate burden of proof.
“The common law defense of duress excuses acts which would otherwise constitute a crime, where the defendant shows that the acts were the product of threats inducing a reasonable fear of immediate death or serious bodily injury.” Pancoast v. Commonwealth, 2 Va.App. 28, 33, 340 S.E.2d 833, 836 (1986). Graham testified that he acted under conditions of extremis and to defend himself when he entered the Hashes’ trailer to get a gun to hold his attackers at bay.
Each claim of self-defense and duress “is an affirmative defense, the absence of which is not an element of [the offenses Graham was charged with committing].” McGhee, 219 Va. at 562, 248 S.E.2d at 810. Graham had the burden of persuading the jury that he acted in self-defense or under duress only to the degree necessary to raise a reasonable doubt about his guilt. See id.; see also Smith v. Common *685 wealth, 17 Va.App. 68, 71, 435 S.E.2d 414, 416 (1993) (discussing the elements of self-defense); Pancoast, 2 Va.App. at 33, 340 S.E.2d at 836 (discussing the elements of duress). “Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in [a manner that is excused by the affirmative defense] is a question of fact.” Smith, 17 Va.App. at 71, 435 S.E.2d at 416. In making that factual determination, the jury should have been informed of the limited nature of Graham’s burden of persuasion.
The Commonwealth argues that self-defense is similar to the concept of alibi for which the jury does not have to be separately instructed on the burden of proof. In Fenner v. Commonwealth, 152 Va. 1014, 148 S.E. 821 (1929), however, the Supreme Court held that alibi is not an affirmative defense. See id. at 1019, 148 S.E. at 822.
“Alibi is regarded by some courts as a special affirmative defense, but the better doctrine seems to be that it is not a defense in the accurate meaning of the term, but a mere fact shown in rebuttal of the State’s evidence; and, consequently, the evidence introduced to support it should be left to the jury, uninfluenced by any charge from the court tending to place it upon a different footing from other evidence in the case or calculated to disparage and excite prejudice against it.”
Hí ^ H< Hi Hi
“Thus, where the evidence offered by the defendant is of an alibi — that is, that he was at another place at the time the crime was committed, and therefore could not have committed it — he is obviously merely disproving the truth of the prosecution’s evidence or inference from evidence; he is making an entirely negative defense. It is not for him to establish an alibi, but simply to throw doubt on the case of the prosecution.”
Id. at 1019-20, 148 S.E. at 822-23 (citations omitted).
The instruction Graham tendered was vital to the jury’s understanding because many of the instructions to the jury addressed the notion of proof beyond a reasonable doubt, the *686 Commonwealth’s ultimate burden of persuasion. It is reasonable to conclude that the lack of an instruction clearly explaining Graham’s burden of persuasion effectively conveyed to the jury that Graham had to prove his affirmative defenses beyond a reasonable doubt. No instruction either informed them otherwise or provided them with the proper guidance. See Taylor v. Commonwealth, 12 Va.App. 419, 422, 404 S.E.2d 78, 80 (1991) (holding that “the trial judge should [instruct] the jury as to the law of the case applicable to the facts in such a manner that they may not be misled”). The trial judge was obligated to properly instruct the jury on this point so that the jury would not apply the wrong standard and expect Graham to meet the same high level of persuasion contained in other instructions it received.
The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict, so far as it is competent for the court to assist them. The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relation of the particular evidence adduced to the particular issues involved. In his instructions the trial judge should inform the jury as to the law of the case applicable to the facts in such a manner that they may not be misled.
Cooper v. Commonwealth, 2 Va.App. 497, 500, 345 S.E.2d 775, 777 (1986) (citation omitted).
IV.
In summary, the trial judge committed reversible error in refusing to give the instructions concerning heat of passion and Graham’s burden of persuasion on affirmative defenses. In acquitting Graham of malicious wounding, attempted malicious wounding, and the lesser-included offenses of those charges, the jury accepted Graham’s defense that he was acting in self-defense when he shot and wounded one of the armed men behind the Gateses’ trailer and shot at another of the armed men pursuing him. In determining Graham’s *687 defense that he entered the house and took the guns to defend himself because of duress, the jury was not informed that proof of this defense was not to be determined by the heightened standard of beyond a reasonable doubt, which was contained in several instructions. “As this Court noted in Cooper v. Commonwealth, 2 Va.App. 497, [500,] 345 S.E.2d 775[, 777] (1986), ‘[t]he purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict.’ ” Diffendal v. Commonwealth, 8 Va.App. 417, 422, 382 S.E.2d 24, 26 (1989) (citation omitted).
For these reasons, I would reverse the convictions and remand for a retrial with a properly instructed jury. I dissent.