UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Malveaux and Senior Judge Frank
Argued at Newport News, Virginia

JAMAR DOMINIC GREEN

MEMORANDUM OPINION[*] BY
v.      Record No. 0344-17-1       JUDGE ROBERT P. FRANK
                                   FEBRUARY 13, 2018

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
C. Peter Tench, Judge

Joshua A. Goff (Goff Voltin, PLLC, on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Mark R. Herring, Attorney General, on brief), for appellee.


Jamar Dominic Green, appellant, was convicted in a jury trial of use of a firearm in the

commission of a felony in violation of Code § 18.2-53.1 and discharge of a firearm in a public

place in violation of Code § 18.2-280.  He argues on appeal that Code § 18.2-280(E) precluded

the Commonwealth from charging him with both firearm offenses, that the evidence was

insufficient to convict him, and that the trial court erred in refusing to instruct the jury on

self-defense, accidental wounding of another while acting in self-defense, duress, and the right to

arm.  We hold that the jury was properly instructed and the evidence was sufficient to convict

appellant, but we find the trial court erred in not requiring the Commonwealth to elect which

firearm offense it would prosecute.  Thus, we remand appellant's convictions under Code

§§ 18.2-53.1 and 18.2-280 with direction for the Commonwealth to elect which one of the

firearm convictions should be set aside.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

The evidence established that on the evening on March 3, 2016, Michael Griffin went to Club Paradise in Newport News with some friends. Griffin saw appellant sitting at the bar with some other men, but was not acquainted with appellant and had no interaction with him. At some time after 11:00 p.m., Griffin testified he went outside to put some food he had ordered in his car and then stood outside the club to smoke a cigar. Video excerpts from the club's surveillance cameras, which were played at trial, showed that as Griffin re-entered the club, a man and a woman left the club and got into an SUV that was parked on the left side of the club toward the rear of the building. The man turned on the vehicle's lights as though he "was ready to go," but he did not leave immediately. The club owner testified that the man had argued with the woman earlier in the evening after seeing her talk with appellant and that the man grabbed the woman and "yanked" her out of the club.

The video further revealed appellant exited the club and stood outside near the front door. About a minute later, Griffin and another man, who was wearing a knit hat and had been seen inside the club with appellant, came out of the club. Griffin testified he walked toward the parked SUV, intending to talk to the man about playing more pool, as they had played earlier in the evening. While the man with the knit hat stood at the front door of the club, holding it partially open, appellant walked to the passenger side of appellant's car, which was parked near the left corner of the building, and retrieved an item from the car before returning to the walkway at the corner of the building. Appellant appeared to be hiding something. The video revealed that as soon as appellant returned to the "balcony" of the club, he turned around with a gun in his hand. The club owner, who was watching the incident in real time on the surveillance cameras inside the club, testified that appellant retrieved his gun from his vehicle, returned to the front of the club, turned around, and was "aiming to shoot" the man in the SUV, but before he could do

- 2 -

so, "[t]he [SUV] guy got [appellant] first." Appellant ran into the club after he was shot. The man in the knit hat grabbed appellant's gun and then stood at the partially opened front door and fired at the departing SUV. Appellant left the premises before police arrived at 12:38 a.m. Griffin was the only person in the parking lot when the police arrived.

Griffin was shot in his left hip as he was standing by the driver's side of the SUV talking with the driver. Griffin testified at trial that immediately before he was shot, the man driving the SUV told him to "get out the way." Griffin said he was shot before he saw the SUV driver pull out a gun and start shooting, as the SUV fled the parking lot at a high rate of speed. The driver did not aim his gun at Griffin. Griffin heard "a whole lot of shooting" as he ducked for cover behind a nearby parked car.

The officers investigating the crime initially thought that appellant was a victim of the shooting. When interviewed at the hospital a few days after the incident, before he was a suspect, appellant told the police he had not had a gun at the time of the shooting, had not fired any shots, and did not know who the shooter was. After watching the surveillance video, the police determined appellant had fired the first shot and did not follow up on other possible suspects. The persons in the SUV were never identified or located.

The police did not recover any weapons, but they found nineteen cartridge cases at the scene, most of which were located within nineteen feet of the front door of the club and on the left side of the parking lot. Two cars belonging to persons who were at the club, which were parked on the left side of the lot near the street, were hit by bullets.

At the conclusion of the Commonwealth's case in chief, appellant moved to strike the charges, arguing the evidence showed that he had acted in self-defense and that Code § 18.2-280(E) precluded the Commonwealth from prosecuting him for discharging a firearm in public as well as aggravated malicious wounding and the related use of a firearm in the

commission of that offense. The Commonwealth argued that the offenses had different elements, and the court denied the motion. Appellant presented no evidence and renewed his motion on the same grounds, which the court again denied.

This appeal followed.

ANALYSIS

I. Code § 18.2-280(E)

Code § 18.2-280 criminalizes the willful discharge of firearms in public places. Depending on where the act occurs and whether anyone is injured, the offense may be punished as a Class 1 misdemeanor, or a Class 4 or a Class 6 felony. Here, appellant was charged with a Class 6 felony under Code § 18.2-280(A), namely, that he willfully discharged a firearm in a public place, which resulted in bodily injury to another person. Appellant also was charged with aggravated malicious wounding and the related use of a firearm. The jury acquitted appellant of aggravated malicious wounding but convicted him of discharging a firearm in public under Code § 18.2-280 and use of a firearm in the commission or attempted commission of aggravated malicious wounding or malicious wounding under Code § 18.2-53.1.

Code § 18.2-280(E) states: "Nothing in this statute shall preclude the Commonwealth from electing to prosecute under any other applicable provision of law instead of this section." According to appellant, this subsection "does not allow the Commonwealth to charge a defendant with discharging a firearm in public causing bodily injury and another crime involving an injury that occurred from the same gunshot."

The sole issue presented in the assignment of error is the construction of Code § 18.2-280(E). On appeal, we consider questions of statutory interpretation *de novo*. Warrington v. Commonwealth, 280 Va. 365, 370, 699 S.E.2d 233, 235 (2010); Le v. Commonwealth, 65 Va. App. 66, 76, 774 S.E.2d 475, 488 (2015).

- 4 -

Appellant contends that the unambiguous language of subsection (E) requires the Commonwealth to choose either to prosecute under Code § 18.2-280(A), (B), or (C) or to prosecute under "any other applicable provision of law instead of [Code § 18.2-280]." Specifically, appellant argues that a prosecution for aggravated malicious wounding and a related charge for use of a firearm bars a prosecution for discharging a firearm under Code § 18.2-280(A). The Commonwealth responds that appellant's interpretation would create absurd results, as it would bar the Commonwealth from prosecuting a clear violation of Code § 18.2-280(A) in a case where a perpetrator shot a victim during the course of a robbery, causing permanent and significant physical impairment. The Commonwealth also posits that appellant's interpretation would limit the Commonwealth to prosecuting the perpetrator only for discharging a firearm under Code § 18.2-280(A), rather than for the more serious offenses of robbery and aggravated malicious wounding.

Under well-established principles of statutory construction,

> when a statute . . . is clear and unambiguous[,] . . . a court may look only to the words of the statute to determine its meaning. The intention of the legislature must be determined from those words, unless a literal construction would result in a manifest absurdity. Thus, when the legislature has used words of a clear and definite meaning, the courts cannot place on them a construction that amounts to holding that the legislature did not intend what it actually has expressed.

Hubbard v. Henrico Ltd. Pshp., 255 Va. 335, 339-40, 497 S.E.2d 335, 337 (1998) (citations omitted). Also, "[w]ords in a statute should be interpreted, if possible, to avoid rendering words superfluous." Cook v. Commonwealth, 268 Va. 111, 114, 597 S.E.2d 84, 87 (2004).

Code § 18.2-280(E) states the Commonwealth is not precluded "from *electing* to prosecute under any other applicable provision of law *instead of* this section." (Emphasis added). "Generally, the words and phrases used in a statute should be given their ordinary and usually accepted meaning . . . ." Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d

530, 534 (1994). "Elect" is defined as "to pick out; to select from two or more; to choose; to determine in favor of." Webster's New Universal Unabridged Dictionary 582 (2d ed. 1983). "Instead" is defined as "an alternative or substitute," used "in place of the person or thing mentioned." Id. at 951.

There is no ambiguity in Code § 18.2-280(E), and no further interpretation is necessary. "When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that language." Vaughn, Inc. v. Beck, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001). The Commonwealth's interpretation of the statute renders the words "elect" and "instead" superfluous. See Cook, 268 Va. at 114, 597 S.E.2d at 87. Thus, Code § 18.2-280(E) requires the Commonwealth to choose to prosecute under Code § 18.2-280(A), (B), or (C) *or* choose to prosecute under any other applicable provision of law.

Furthermore, the Commonwealth's hypothetical fails. Code § 18.2-280(E) does not limit the Commonwealth to prosecuting only the discharge of a firearm offense if a perpetrator commits that offense while committing murder or robbery. The statute simply gives the Commonwealth a choice as to which offense to prosecute and the Commonwealth can proceed with the murder and robbery charges, if it so chooses.

A statute should be construed consistent with legislative intent, as determined from the words used in the statute. See Turner v. Commonwealth, 65 Va. App. 312, 323, 777 S.E.2d 569, 575 (2015). If the legislature had intended the statute to mean what the Commonwealth asserts it means, the legislature could have said so. For example, Code §§ 18.2-36.1 and 18.2-36.2, which provide that a person is guilty of involuntary manslaughter if he causes the death of another while driving or operating a watercraft while under the influence of alcohol or drugs, state that "[t]he provisions of this section shall not preclude prosecution under any other homicide statute." Code §§ 18.2-36.1(C) and 18.2-36.2(C). Code § 18.2-108.01, which proscribes the commission

of larceny with the intent to sell or distribute stolen property, contains a provision specifying that "[a] violation of this section constitutes a separate and distinct offense." Code § 18.2-108.01(C).

In his motion to strike, appellant challenged the sufficiency of the evidence but also raised his argument regarding Code § 18.2-280. Appellant's motion to strike was not the proper vehicle for raising a statutory interpretation issue. "The office of a motion to strike the evidence, made at the conclusion of the Commonwealth's case, is to challenge the sufficiency . . . of the evidence." Poole v. Commonwealth, 211 Va. 258, 260, 176 S.E.2d 821, 823 (1970). See also Rule 3A:15(a) (stating in part: "After the Commonwealth has rested its case or at the conclusion of all the evidence, the court on motion of the accused may strike the Commonwealth's evidence if the evidence is insufficient as a matter of law to sustain a conviction.").

Appellant should have challenged the indictments for the firearm offenses before trial and required the Commonwealth to elect which offense it intended to prosecute. See Code § 19.2-266.2 (providing that defense motions seeking to dismiss indictment must be made in writing not later than seven days before trial, but court may allow motion to be raised later "for good cause shown and in the interest of justice"). We assume without deciding that appellant's statutory construction argument, which he made during the motion to strike, was both timely and an inartful but separate motion that the Commonwealth make the election required by Code § 18.2-280(E). We find then, for the reasons stated, the trial court erred in not granting appellant's motion and requiring the Commonwealth to elect which offense it would prosecute. We remand appellant's convictions under Code §§ 18.2-53.1 and 18.2-280 with direction for the Commonwealth to elect which of the two convictions should be set aside.

## II. Motion to Strike – Self-Defense

Essentially, appellant challenges the sufficiency of the evidence, contending the evidence did not exclude the reasonable theory of innocence that he fired his weapon in self-defense. It is

important to note that appellant is not challenging the jury's finding of fact, but only the trial court's failure to grant his motion to strike.

> A motion to strike challenges whether the evidence is sufficient to submit the case to the jury. What the elements of the offense are is a question of law that we review *de novo*. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong. If reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom.

Lawlor v. Commonwealth, 285 Va. 187, 223-24, 738 S.E.2d 847, 868 (2013) (citations omitted).

After viewing the evidence, the Court asks

> whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In sum, if there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial.

Id. at 224, 738 S.E.2d at 868 (quoting Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (citations, internal quotation marks, and alterations omitted)).

The court's role, in evaluating whether to grant the motion to strike, is to determine whether the evidence is sufficient to convict appellant of the charges. "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993). Put differently, the question is whether the evidence is sufficient for the jury to acquit appellant because he acted in self-defense.[1] Further, while a "scintilla of evidence" is relevant in determining whether to grant a jury instruction, it is not the standard used to evaluate a motion to strike.

---

[1] The jury was not instructed on self-defense, but as discussed in Section III of this opinion, the evidence presented at trial did not support any self-defense instructions.

Virginia law recognizes two forms of self-defense to criminal acts of violence: self-defense without fault ("justifiable self-defense") and self-defense with fault ("excusable self-defense"). "Justifiable homicide in self-defense occurs where a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself." Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958). On the other hand,

> [e]xcusable homicide in self-defense occurs where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm. Id.

Bell v. Commonwealth, 66 Va. App. 479, 487, 788 S.E.2d 272, 275-76 (2016).[2] See also

Cortez-Hernandez v. Commonwealth, 58 Va. App. 66, 81, 706 S.E.2d 893, 901, aff'd on reh'g

en banc, 59 Va. App. 37, 716 S.E.2d 484 (2011).

Appellant's theory is that he acted in justifiable self-defense, not excusable self-defense.

He frames his self-defense argument on his claim that he did not fire the first shot and was not

the aggressor. According to appellant, "[i]t simply cannot be determined from the available

evidence whether [appellant] fired first or fired only after he was fired upon." Appellant also

asserted with respect to his claim that the jury should have been instructed on self-defense that

"[t]he surveillance footage, which the detective acknowledged was central to his charging

decision, did not show what was happening at the moment [appellant] fired his weapon[,]

whether [appellant] was shot prior to allegedly discharging his firearm." Appellant argued at

trial during his motion to strike that the video did not show who was the first person to brandish

---

[2] Self-defense is not limited to homicide. Self-defense "is a response to the threat of death or serious bodily harm. It is a defense to an act of violence that repels violence directed at the defendant." Graham v. Commonwealth, 31 Va. App. 662, 672, 525 S.E.2d 567, 572 (2000). In fact, Code § 18.2-280(D) states that the statute does not apply to any "person whose said willful act is otherwise justifiable or excusable at law in the protection of his life or property, or is otherwise specifically authorized by law."

or fire a firearm, as appellant was "struck almost instantly several times" and then "an unknown person" fired a weapon[3] and "undoubtedly there's firing coming from the vehicle as well, but [the video does not show] the timeline in which that occurred." Appellant also argued there was no evidence as to why the shooting occurred or "who started it."

Self-defense is an affirmative defense and the defendant "assumes the burden of introducing evidence of justification or excuse . . . ." McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978). It was appellant's burden to show that he fired only after he was shot. He failed to do so. By appellant's own argument, the evidence did not show he was not the aggressor.

Additionally, other evidence in the case established appellant was the aggressor. The club owner testified at trial that the man in the SUV had argued with his supposed girlfriend after she had spoken with appellant inside the club and the man had then "yanked" the woman out of the club. There was no evidence, however, that this incident caused appellant to fear death or bodily harm was imminent, thus necessitating that he arm himself for protection.

Griffin testified that he was standing by the side of the SUV talking with the male driver when the man told him to "get out the way" and immediately after that, Griffin was shot in his left hip. Griffin said he was shot before he saw the SUV driver pull out a gun, which he did not aim at Griffin. Griffin ducked for cover behind a nearby parked car, from where he heard "a whole lot of shooting."

The video excerpts from the club's surveillance cameras showed appellant leave the club after the man in the SUV left the club. Appellant then retrieved an item from his car and returned to the walkway in front of the club. Appellant stood at the corner of the club's building

---

[3] The surveillance video excerpt shows this person was the man wearing the knit cap who was seen with appellant at the club that evening.

firing a gun at the SUV as the vehicle left the parking lot. It then appeared from the video that appellant had been wounded. The reasonable inference from this evidence, taken in the light most favorable to the Commonwealth, is that appellant armed himself prior to any gunshots being fired and then fired first at the SUV, but hit Griffin. Appellant exchanged gunfire with the SUV driver after the driver pulled his weapon. The SUV driver hit appellant in the chest as the SUV drove away from the club.

Appellant did not tell the detective investigating the crime that he had acted in self-defense; rather appellant said he did not have a gun and did not fire any shots. Appellant's statements were refuted by the other evidence and thus served as further proof he did not act in self-defense. See Parham v. Commonwealth, 64 Va. App. 560, 566-67, 770 S.E.2d 204, 208 (2015).

Because the evidence did not support appellant's claim that he acted in self-defense, we conclude the trial court did not err in denying appellant's motion to strike.

### III. Jury Instructions

Appellant contends the trial court erred in refusing his instructions B (justifiable self-defense), C (duress), D (accidental wounding of Griffin resulted from self-defense as to actions of another), and E (right to arm for necessary self-protection). The essence of appellant's argument is that the trial court erred in ruling it could not give the four proffered instructions because appellant had not presented any evidence to support them.

Granting or denying jury instructions "rest[s] in the sound discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009). The trial court's ruling is reviewed on appeal for an abuse of discretion. See Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*).

> "A reviewing court's responsibility in reviewing jury instructions
> is 'to see that the law has been clearly stated and that the

- 11 -

instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). However, while a defendant is entitled to have the jury instructed on his theory of the case, such an instruction must be supported by "[m]ore than a scintilla of evidence." Eaton v. Commonwealth, 240 Va. 236, 255, 397 S.E.2d 385, 397 (1990). "The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis." Woolridge v. Commonwealth, 29 Va. App. 339, 348, 512 S.E.2d 153, 157 (1999). Upon review, the evidence must be viewed in the light most favorable to the proponent of the instruction.

Mayberry v. Commonwealth, 66 Va. App. 93, 101, 782 S.E.2d 599, 603 (2016).

Assuming without deciding that the trial court erred in ruling the instructions should be refused because appellant had not testified,[4] we conclude the court still properly refused the appellant's instructions because there was no evidence presented at trial, viewed in the light most favorable to appellant, that supported the instructions. See Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001); McCoy v. Commonwealth, 9 Va. App. 227, 234, 385 S.E.2d 628, 631 (1989).

The law is well settled that "an instruction is proper only if supported by more than a scintilla of evidence." Sands, 262 Va. at 729, 553 S.E.2d at 736; accord Avent v. Commonwealth, 279 Va. 175, 202, 688 S.E.2d 244, 259 (2010); Williams v. Commonwealth, 64 Va. App. 240, 246, 767 S.E.2d 252, 255-56 (2015). Whether evidence amounts to more than a "scintilla" "must necessarily be determined in the factual context of a particular case," considering "the weight of that evidence in comparison to the weight of the other credible

---

[4] See, e.g., Ault v. State, 950 N.E.2d 326, 330-31 (Ind. Ct. App. 2011) (holding defendant's testimony was not a prerequisite to giving a self-defense instruction, as other evidence presented in case was sufficient to support the instruction); State v. Johnson, 719 N.W.2d 619, 630-31 (Minn. 2006) (holding defendant was entitled to a jury instruction on self-defense even though he did not provide any direct evidence about his state of mind, as defendant may prove his state of mind by circumstantial evidence).

evidence that negates the proposition in question." Brandau v. Commonwealth, 16 Va. App. 408, 411-12, 430 S.E.2d 563, 565 (1993).

When defending his proposed instructions, appellant argued that since there was a dispute as to who shot first, only the jury could resolve that issue. Appellant admitted, however, the video did not show what was happening when appellant fired his weapon. This is not an instance where there is conflicting evidence for the jury to resolve.

Appellant contended that not knowing who fired the first shot provided more than a scintilla of evidence to support instructions B – E. His argument ignores two fundamental principles of evaluating whether an instruction should be granted. First, the burden of establishing the affirmative defense of self-defense rests on the defendant. Sands, 262 Va. at 729, 553 S.E.2d at 736. Second, his argument only invites the jury to speculate as to who fired the first shot.

A scintilla of evidence must be based on facts, which presupposes that some evidence exists. None exists here, but appellant asserts that a "scintilla" of evidence in this case is the absence of facts. However, a scintilla of evidence cannot be based on conjecture or speculation. See generally Commonwealth v. Donkor, 256 Va. 443, 446-47, 507 S.E.2d 75, 77 (1998) (stating that "jury's ability to reject evidence [is not a proper] substitute for the evidentiary support required to grant a defendant's request for an instruction on [self-defense]").

Further, "[i]f the instruction is not applicable to the facts and circumstances of the case, it should not be given. Thus, it is not error to refuse an instruction when there is no evidence to support it." Sands, 262 Va. at 729, 553 S.E.2d at 736 (citations omitted); accord Avent, 279 Va. at 202, 688 S.E.2d at 259; Williams, 64 Va. App. at 247, 767 S.E.2d at 256.

The evidence here, including the surveillance footage and the testimony of Griffin and the club owner, did not support appellant's proffered instructions. The altercation apparently

stemmed from appellant's conversation inside the club with the girlfriend of the man driving the SUV, but while the club owner testified the SUV driver was upset with his girlfriend, there was no evidence the SUV driver exchanged angry words or threats with appellant. Appellant was not prohibited from leaving the club, and he could have avoided the gunfire exchange with the SUV driver if he had simply walked out of the club and left in his car, rather than retrieving his gun and returning to the front of the club building. See Avent, 279 Va. at 202-03, 688 S.E.2d at 259 (holding that defendant "forfeited his right to a [justifiable] self-defense jury instruction because he was not without fault in bringing on the difficulty that resulted in [victim's] death," as defendant could have left victim's house after their altercation ended but "pursued [victim] upstairs carrying a shotgun"); Graham v. Commonwealth, 31 Va. App. 662, 674-75, 525 S.E.2d 567, 573 (2000) (stating duress is not available as a defense when the evidence shows that defendant failed "to take advantage of a reasonable opportunity to escape, or of a reasonable opportunity to avoid doing the acts without being harmed" (quoting Pancoast v. Commonwealth, 2 Va. App. 28, 33, 340 S.E.2d 833, 836 (1986))).

There is no evidence, nor any inferences drawn therefrom, that appellant had any reasonable basis to believe the SUV driver intended to attack him and thus appellant needed to arm himself for fear of being attacked. Nor is there any evidence that appellant thought he was in reasonable fear of imminent death or bodily injury when he retrieved his gun from his car and displayed the gun while he stood at the corner of the club building in sight of the SUV. See Sands, 262 Va. at 730, 553 S.E.2d at 737 (holding that defendant was not entitled to self-defense jury instruction because, while defendant genuinely feared for her safety based on her husband's past abusive conduct, there was no "evidence of an overt act indicating imminent danger, or indeed any act at all by her husband, when she shot him five times while he reclined on the bed watching television"); Bailey, 200 Va. at 96, 104 S.E.2d at 31 (stating defendant may claim he

committed justifiable homicide arises when he acted "without any fault on his part in provoking or bringing on the difficulty," and was "under reasonable apprehension of death or great bodily harm to himself"). As the trial court noted, a defendant may not claim he had a right to arm himself for self-protection when he armed himself before he had a reasonable belief another person intended to injure or harm him. See Jordan v Commonwealth, 219 Va. 852, 855-56, 252 S.E.2d 323, 325 (1979) ("[a] man cannot go a-gunning for an adversary" and then claim he killed in self-defense (quoting Sims v. Commonwealth, 134 Va. 736, 760, 115 S.E. 382, 390 (1922))). Additionally, having determined there was no basis to instruct the jury on self-defense, we find appellant was not entitled to instruction D, which concerned the accidental wounding of Griffin resulting from self-defense as to the actions of another.

Appellant did not meet his burden to show he was without fault in provoking or bringing about the incident. It is uncontroverted that before any shooting began, appellant retrieved a gun from his car, went to the front of the club, and aimed at the SUV. It is of no moment who shot first. Appellant was the aggressor. The theory of self-defense is not available to the aggressor. Lamb v. Commonwealth, 141 Va. 481, 488 126 S.E. 3, 5 (1925).

We conclude the trial court did not err in refusing to give appellant's instructions B – E, as no scintilla of evidence existed to support them and the uncontroverted evidence showed appellant to be the aggressor.

CONCLUSION

In sum, we hold that pursuant to Code § 18.2-280(E), the trial court erred in not requiring the Commonwealth to elect which of the two firearm offenses it would prosecute, and we remand appellant's convictions for the Commonwealth to elect which of the two convictions should be set aside. Upon election, the trial court should reimpose the sentence already given for the remaining conviction. Further, we hold the evidence was sufficient to sustain appellant's

convictions under Code §§ 18.2-53.1 and 18.2-280, and the trial court did not err in refusing to

give appellant's proffered instructions B – E.

<u>Affirmed in part, and</u>
<u>remanded with instructions.</u>