COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


CARLTON WILLIAM ARNOLD
                                            OPINION BY
v.    Record No. 0143-01-2        JUDGE ROBERT J. HUMPHREYS
                                          MARCH 26, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                 Paul M. Peatross, Jr., Judge

          Francis C. Terwilliger for appellant.

          Stephen R. McCullough, Assistant Attorney
          General (Randolph A. Beales, Attorney
          General, on brief), for appellee.


     Carlton William Arnold appeals his conviction, after a jury

trial, for second degree murder.  Arnold contends that the trial

court erred in:  1) refusing to instruct the jury that duress

could be considered in determining whether the Commonwealth had

proven the elements of murder; 2) refusing to instruct the jury

that heat of passion negated the element of malice when there was

evidence of duress; and 3) in refusing to instruct the jury on

manslaughter.  For the reasons that follow, we affirm the

conviction.

## I.  Background

     During the early morning hours of September 22, 1998, a gas

station convenience store clerk, Osama Hassan, was shot ten times

with a pistol and killed.  A cash register was taken from the store which contained $100.03.

An investigation conducted by the Charlottesville Police Department led officers to question Arnold about the murder and robbery.  During the questioning, Arnold volunteered information about the gas station robbery and admitted that he had shot Hassan.

Arnold was charged with robbery, first degree murder, burglary and two firearm charges.  Due to his mild mental retardation, Arnold was given a competency evaluation and found competent to stand trial.

At trial, Arnold testified that on the night of the robbery, he had been drinking alcohol and smoking marijuana with friends. He later agreed to ride around with two of the friends, Isaac Shelton Brown and Dylan Tyree.  Arnold stated that after pulling into a parking lot near a gas station, Tyree demanded that Arnold do a "favor" for him - specifically, that Arnold rob and kill the store clerk at the gas station.  Arnold claimed that he refused and tried to get out of the car, but Tyree "threw a gun" in his face and threatened to kill him unless he complied with his demands.

Tyree and Brown then took Arnold to the back of the store and dressed him in a disguise, covering his head, arms and hands. Arnold stated that they again told him that if he did not comply with their demands, they would leave him there, dead.  Tyree and

-

Brown gave Arnold a .22 caliber semi-automatic pistol. Arnold claimed that Tyree also had a large caliber revolver. Tyree and Brown then watched Arnold as he approached Hassan, who was sitting in a chair on the front porch of the store. Tyree ordered him to shoot, and Arnold shot Hassan ten times within one to two seconds. Arnold stated he then took the cash box and ran.

At that point, Tyree took the gun from him and they left in the car. Arnold claimed that Tyree again threatened to kill him if he told anyone about the shooting. Arnold testified that Tyree had shot at him on a separate occasion for losing stolen watches he was trying to sell for Tyree.

A psychiatrist for the defense testified that Arnold is mentally retarded and that, although he had been promoted at school, he had been a part of the special education curriculum since he was seven years old. Because of his condition, Arnold often attempted to please persons in authority, and had difficulty with solving complex problems and in determining alternative courses of action. The psychiatrist also testified that Arnold would often "believe[] threats he [had] heard."

At the close of the evidence, Arnold requested that the jury be instructed as follows:

> Duress is not a defense to the charge of
> murder. However, you may consider evidence
> of duress, together with all other evidence
> in the case, in determining whether or not
> the Commonwealth has proven all the elements
> of murder beyond a reasonable doubt.

-

The Commonwealth objected to the duress instruction on the murder charge.

Arnold next requested that the jury be instructed on heat of passion, arguing there was heat of passion because Arnold was in "terror" or "fear" of Tyree. Finally, Arnold requested that the court instruct the jury on voluntary manslaughter. The court denied Arnold's requests, holding that duress is not a defense to murder, nor its "selective elements," and that "there was no provocation other than from insulting words and threats . . . ."

After retiring for deliberation, the jury returned with two questions: 1) "If we find that the defendant acted under duress, is it still possible to find him guilty of first degree murder?" and 2) "Does the elimination of the robbery charge by finding him not guilty by reason of duress not allow us to consider the third element for a first degree murder conviction?"[1] After hearing argument, the trial court responded, "[y]es," to the first question and, "[n]o, you may consider it," to the second question. Thereafter, the jury returned its verdict, finding Arnold guilty of second degree murder and acquitting him of the remaining charges.

---

[1] The third element referred to by the jury was whether "the killing occurred in the commission or attempted commission of robbery, or that said killing was willful, deliberate and premeditated."

-

## II.  Analysis

On appeal, Arnold first argues that the trial court erred in refusing to provide the jury with his proffered instruction concerning duress.  We disagree.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"[2]  "A defendant is entitled to have the jury instructed only on those theories of the case that are supported by evidence.  The evidence to support an instruction 'must be more than a scintilla.'"[3]  "[F]or purposes of resolving the issue of the trial court's jury instruction, we are concerned with [appellant's] version of the events surrounding the crime[] and not a determination of its truthfulness."[4]  However, "[a] jury instruction, even though correctly stating the law, should not be given if it is not applicable to the facts in evidence."[5]

---

[2] Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).

[3] Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986) (quoting LaVasseur v. Commonwealth, 225 Va. 564, 581, 304 S.E.2d 644, 653 (1983), cert. denied 464 U.S. 1063 (1984)) (other citations omitted).

[4] Sam v. Commonwealth, 13 Va. App. 312, 322, 411 S.E.2d 832, 837 (1991).

[5] Bolyard v. Commonwealth, 11 Va. App. 274, 277, 397 S.E.2d 894, 896 (1990).

-

"Duress excuses criminal behavior 'where the defendant shows that the acts were the product of threats inducing a reasonable fear of immediate death or serious bodily injury.'"[6]

> "The rationale of the defense of duress is that, for reasons of social policy, it is better that the defendant, faced with a choice of evils, choose to do the lesser evil (violate the criminal law) in order to avoid the greater evil threatened by the other person."  Thus, a person subject to duress may justifiably violate the literal language of the criminal law in order to avoid a harm of greater magnitude.[7]

"Where it is properly shown, duress is a complete defense to a crime."[8]  "[However,] [i]t is this balancing of harms that generally precludes the use of duress as a defense to murder."[9] "An exception to the rule that duress is not available as a defense to murder is in felony murder cases, where one confederate is held responsible for a killing committed by his co-actor during the commission of the underlying felony."[10]

Here, there was no evidence that a co-actor committed the murder.  Thus, Arnold was not entitled to the duress instruction on the murder charge.  Further, the defense of duress "[i]s not

---

[6] Graham v. Commonwealth, 31 Va. App. 662, 674, 525 S.E.2d 567, 573 (2000) (quoting Pancoast v. Commonwealth, 2 Va. App. 28, 33, 340 S.E.2d 833, 836 (1986)).

[7] Sam, 13 Va. App. at 323, 411 S.E.2d at 838 (quoting 1 W. LaFave & A. Scott, Substantive Criminal Law 614 (1986)).

[8] Pancoast, 2 Va. App. at 33, 340 S.E.2d at 836.

[9] Pugliese v. Commonwealth, 16 Va. App. 82, 95, 428 S.E.2d 16, 26 (1993).

[10] Id.

-

available to negate only selected elements, as urged by appellant.  Such an argument misconceives the nature of the defense."[11]

> "The rationale of the defense is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question.  Rather, it is that, even though he has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude."[12]

Accordingly, we find no error in the trial court's decision to refuse the instruction.

Arnold next argues that the trial court erred in refusing to instruct the jury that heat of passion negated the element of malice, when the evidence demonstrated that Arnold was in "terror" or "in fear for his life" at the time he shot Hassan.  Again, we disagree. [13]

---

[11] _Pancoast_, 2 Va. App. at 33, 340 S.E.2d at 836.

[12] _Id._ (quoting W. LaFave & A. Scott, _Criminal Law_ 374 (3d ed. 1983).

[13] Neither the voluntary manslaughter instruction nor the heat of passion instruction were made a part of the record. Although Rule 5A:7(a)(2) states that the record on appeal from the trial court must include "each instruction marked 'given' or 'refused' and initialed by the judge," the record in this case contains no explanation why the trial judge did not make the refused instructions a part of this record.  Indeed, the Commonwealth does not contend that this fact precludes Arnold's appeal on the instructions.  Further, "[t]he purpose of [Rule 5A:18] is to allow the trial court to cure any error called to its attention, thereby avoiding unnecessary appeals and

-

"Every malicious homicide is murder."[14]  However, a homicide is reduced from murder to voluntary manslaughter if the defendant acted "in the heat of passion and upon reasonable provocation."[15]  "Heat of passion is determined by the nature and degree of the provocation, and may be founded upon rage, fear, or a combination of both."[16]  While it is true that "[m]alice and heat of passion are mutually exclusive,"[17] we have held that where it is not the victim of the crime who invoked the defendant's heat of passion, there was no evidence to support a finding of heat of passion.[18]  Thus, since there was no evidence that Hassan, the victim, committed any action invoking fear and/or rage in Arnold, we find no error in the trial court's refusal of the instruction.

---

retrials."  Herring v. Herring, 33 Va. App. 281, 286, 532 S.E.2d 923, 926 (2000) (citation omitted).  Here, the colloquy between defense counsel and the trial judge adequately satisfied the purpose of Rule 5A:18.  The trial judge knew of the instruction and had the issues and arguments before him so that he could make an informed decision.  Thus, the lack of the precise written instruction in the record before us does not engender a situation where the rationale of Rule 5A:18 applies.

[14] Barrett v. Commonwealth, 231 Va. 102, 105, 341 S.E.2d 190, 192 (1986).

[15] Id. at 105-06, 341 S.E.2d at 192.

[16] Id. at 106, 341 S.E.2d at 192.

[17] Id.

[18] Peeples v. Commonwealth, 30 Va. App. 626, 634-35, 519 S.E.2d 382, 386 (1999).

-

Arnold also contends the trial court erred in refusing to provide the jury with his proffered instruction of manslaughter, as well as a corresponding verdict form. We disagree.

As stated above, "[t]o reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation."[19] Here, it is clear from the evidence that Hassan neither provoked Arnold, nor engaged him in mutual combat. Instead, Arnold argues that because Tyree and Brown placed him in a state of fear, the jury could have found that he acted out of "fear for his life" instead of "malice."

> "Malice aforethought" implies a mind under the sway of reason, whereas "passion" whilst it does not imply a dethronement of reason, yet is the furor brevis, which renders a man deaf to the voice of reason; so that, although the act was intentional of death, it was not the result of malignity of heart, but imputable to human infirmity. Passion and malice are, therefore, inconsistent motive powers, and hence an act which proceeds from the one, cannot also proceed from the other.[20]

Arnold contends that because he feared for his life, he acted out of a sense of self-preservation. Thus, although he may have been in fear, Arnold's own testimony established that he made the conscious choice to kill Hassan, rather than risk injury to

---

[19] Barrett, 231 Va. at 105-06, 341 S.E.2d at 192.

[20] Hannah v. Commonwealth, 153 Va. 863, 870, 149 S.E. 419, 421 (1929).

himself.  Accordingly, the circumstances in evidence clearly proved a malicious act, with no suggestion of the provocation or passion necessary to support an instruction on voluntary manslaughter.

Moreover, Arnold's claim that his deficient mental capacity and alleged intoxication negated his ability to reason is of no consequence.  Evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt.[21]  Further, voluntary intoxication is not an excuse for any crime.  At most, it may negate the deliberation and premeditation required for first degree murder.[22]  We further note that, despite Arnold's persistent attempts to provide the jury with an instruction negating the element of malice, the jury had the option of finding Arnold acted without malice by finding him not guilty of either first or second degree murder.

Finally, although Arnold correctly asserts that the trial court erred in finding there was no evidence Arnold was confronted with overt threats by Tyree and Brown, given the above discussion, we find that the error was harmless.[23]

---

[21] See Stamper v. Commonwealth, 228 Va. 707, 717, 324 S.E.2d 682, 688 (1985).

[22] See Downing v. Commonwealth, 26 Va. App. 717, 721, 496 S.E.2d 164, 166 (1998).

[23] See Davies v. Commonwealth, 15 Va. App. 350, 353, 423 S.E.2d 839, 840 (1992) (noting that an error is harmless "'if a reviewing court can conclude, without usurping the jury's fact

-

Therefore, we find no error in the trial court's refusal to offer the voluntary manslaughter instruction, nor to offer the jury a corresponding verdict form.

                                                            Affirmed.

---

finding function, that, had the error not occurred, the verdict would have been the same'" (quoting Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc))).

-