COURT OF APPEALS OF VIRGINIA

Present:  Judges Annunziata, Frank and Senior Judge Bray
Argued at Chesapeake, Virginia


KEVIN JARARD MARTIN

MEMORANDUM OPINION[*] BY
v.    Record No. 0470-02-1        JUDGE ROSEMARIE ANNUNZIATA
                                       APRIL 8, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Charles E. Haden for appellant.

Leah A. Darron, Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on
brief), for appellee.


Kevin Jarard Martin, appellant, appeals his conviction by

jury as a principal in the first degree for second-degree

murder, shooting into an occupied vehicle, discharging a firearm

from a vehicle, three counts of attempted maiming, and four

counts of use of a firearm in the commission of a felony.  He

cites as grounds for appeal the trial court's error 1) in

refusing to strike a juror, Erma Mitchell, for cause, 2) in

denying his request that the jury be instructed on manslaughter,

3) in denying his request to instruct the jury on attempted

unlawful wounding and unlawfully shooting into an occupied

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

vehicle and 4) in denying his request to instruct the jury on justifiable homicide.  For the reasons that follow, we affirm.

On appeal, when the issue is a refused jury instruction, we view the evidence in the light most favorable to Martin, the proponent of the instruction.  Lynn v. Commonwealth, 27 Va. App. 336, 344, 499 S.E.2d 1, 4-5 (1998).  So viewed, the record shows that an altercation occurred on the evening of March 2, 2001 that resulted in the killing of a fourteen-year-old bystander, Stephanie McSweeney.  On the evening in question, roommates, Orrien Hymes, Frank Massey and Brian Bennett went to the Plaza Roller Skating Rink in Hampton.  Martin and Audry Lawrence Williams also went to the skating rink that evening.  Massey, who was skating "pretty fast," accidentally bumped into Williams and knocked him to the floor of the rink.  Massey continued skating, unaware that he had knocked down another skater, but Hymes, skating ten feet behind Massey, stopped to make sure Williams was not injured.

Williams was "pretty hot about being knocked down" and began screaming at Hymes.  Martin joined them and began exchanging words with Hymes, stating "You don't know who you're messing with" and making "threatening gestures."  Massey skated around the rink and returned to the place where he had knocked Williams down.  He and Hymes tried to apologize, but "[Williams] took it as we were threatening him."  Massey and Hymes decided to keep skating, but Martin "kept coming up at [them]," and

- 2 -

followed them around the rink while they skated.  After a subsequent encounter between Hymes, Martin and Williams, described by Bennett as a "struggle," the three roommates decided to leave the rink.

The hostilities continued in the parking lot.  As Hymes and Massey walked into the lot and toward Hymes's car, Martin, accompanied by Williams, continued to threaten Massey and Hymes, stating "We are going to get you."  Hymes testified that "[I]t was possible [Massey] was making threats" to Williams and Martin.  Upon reaching his car, Hymes picked up a black plastic toolbox, held it up and said to Martin and Williams, "We got something in this box that will take care of you."  Martin responded that he had something in his car that would take care of Hymes, walked toward Williams's car, entered the car and drove toward the exit.  The cars of each group arrived at the exit at roughly the same time.  As each waited to pull out of the lot into traffic, Williams's car stalled, and Hymes and Massey saw Martin reach for something under the front seat.

As Hymes sped away, he and his two roommates, Massey and Bennett, heard gunfire, and Bennett saw Martin firing at them. Massey saw "somebody grab their chest" and fall down and hit the ground.  The victim was fourteen-year-old Stephanie McSweeney, who was crossing the street to use a pay phone.  McSweeney died from a single gunshot wound to her chest.

Martin was arrested the next morning and questioned about the shooting.  He stated that he did not mean to shoot McSweeney, but believed that one of the bullets he fired hit her "because [he] was shooting that way."

Martin did not testify at trial.  He was tried and found guilty by a jury of second-degree murder in violation of Code §§ 18.2-30 and 18.2-32(a), three counts of attempt to maim, in violation of Code §§ 18.2-51 and 18.2-26, four counts of use of a firearm in the commission of a felony in violation of Code § 18.2-53.1, one count of shooting from a vehicle, in violation of Code § 18.2-286.1, and one count of shooting at an occupied vehicle in violation of Code § 18.2-154.  He was sentenced to serve forty years in prison, with twenty-nine years suspended on the murder conviction, and to three years in prison on the attending firearm conviction.  On each of the three remaining firearm convictions, he was sentenced to serve five years in prison.  He received suspended sentences on his other convictions, for an active sentence of twenty-nine years.

## I.  <u>Jury Selection</u>

On appeal, Martin first contends that that trial court erred when it refused to strike a juror, Erma Mitchell, for cause.  We find no error and affirm.

Martin's claim on appeal is based on the following colloquy during <u>voir</u> <u>dire</u>.

- 4 -

THE COURT: Have any of you expressed or formed any opinion as to the guilt or innocence of the accused in this case?

THE JURORS: No.

THE COURT: Are any of you [sensible] of any bias or prejudice against either the Commonwealth or the accused?

THE JURORS: No.

THE COURT: The defendants are presumed to be innocent. Is there anyone who does not understand that?

THE JURORS: No.

THE COURT: The Commonwealth must prove the defendants' guilt beyond a reasonable doubt. Does anyone not understand that?

THE JURORS: No.

THE COURT: The defendants in this case are not required to produce any evidence. Is there anyone who does not understand that?

THE JURORS: No.

THE COURT: Is there anyone who does not know of any reason whatsoever why you cannot give a fair and impartial trial to both the Commonwealth and to the accused based solely on the law?

THE JURORS: No.

The jurors were questioned individually, and Erma Mitchell was asked if she had received any information about the case from any source. She replied, "All I recall is just, you know, when it happened on the TV and the newspaper." Mitchell told the court she had seen news reports about the shooting and had

some questions.  The following colloquy occurred, <u>inter</u> <u>alia</u>, between Mitchell, defense counsel and the court:

> MR. CLANCY [Appellant's attorney]:  "[I]f it is shown that the young lady that was killed is an innocent bystander, but it is also shown that Mr. Martin acted reasonably under the circumstances as presented to him, could you find him not guilty of the murder of that young lady?
>
> MITCHELL:  Well, that could be - - I would have some questions in my own mind, you know?  You don't want me to say, do you?
>
> MR. CLANCY:  Actually, I do.  This is absolutely the time that you need to say. We need to hear it from you.
>
> MITCHELL:  Well, why did he have a gun down there in the first place that would be one of the things.  Accidentally shot is one thing, but having a gun there I mean you are asking for trouble.
>
> MR. CLANCY:  Did you learn about the gun from the newspaper or media?
>
> MITCHELL:  The media.
>
> THE COURT:  Could you find Kevin Martin not guilty if you find he acted reasonably under the circumstances as believed by him . . . despite the fact that an innocent bystander was killed?
>
> MITCHELL:  That's a difficult question.  Do you want to go over that one more time . . . I suppose so.
>
> THE COURT:  You could find him not guilty?
>
> MITCHELL:  Yes, sir.
>
> MR. CLANCY:  You seem like you have some hesitancy. Would this be difficulty [sic] for you because the law may tell you that you have to do this, but you have personal

beliefs or feelings that will make that
difficult?

MITCHELL:  Yes, I guess it would be a little
difficult, but I still think I could, you
know, render a not guilty verdict.

MR. CLANCY:  If the judge said under the law
you would have to do that.

MITCHELL:  Right.

MRS. CURTIS [Commonwealth's Attorney]:
Judge, I just think the problem here is the
way the question is asked because he
emphasis on the question should be if she
found that he acted reasonably.  If she
found, in fact, that he acted reasonably
then could she find him not guilty even
though an innocent bystander was killed.

MITCHELL:  Yes.

MRS. CURTIS:  And your answer to that is,
yes, and you can say that without
hesitation?

MITCHELL:  Yes, I guess.

On appeal, we accord great deference to a trial court's
decision to deny a motion to exclude a juror for cause, and the
decision will not be disturbed on appeal absent manifest error.
Green v. Commonwealth, 262 Va. 105, 115, 546 S.E.2d 446, 451
(2001).  "[D]oubts as to the impartiality of a juror should
always be resolved in favor the accused[,]" Educational Books,
Inc. v. Commonwealth, 3 Va. App. 384, 385, 349 S.E.2d 903, 906
(1986), but the fact that a prospective juror has some knowledge
of the case is not, in itself, a basis for disqualification.
Pope v. Commonwealth, 234 Va. 114, 124, 360 S.E.2d 352, 358

- 7 -

(1987).  "Even though a prospective juror may hold preconceived views, opinions, or misconceptions . . .," nothing more is required than the prospective juror's ability to "lay aside [her] preconceived views and render a verdict based solely on the law and evidence presented at trial."  Griffin v. Commonwealth, 19 Va. App. 619, 621, 454 S.E.2d 363, 364 (1995) (citations omitted).

> As a fact finder, the trial court must weigh the meaning of the answers given in light of the phrasing of the question posed, the inflections, tone and tenor of the dialogue, and the general demeanor of the prospective juror.  We are aware that, while the words employed, may, when transcribed and read in retrospect, appear ambivalent, the judge who heard them uttered was uniquely positioned to assess their ultimate import.

Smith v. Commonwealth, 219 Va. 455, 464-65, 248 S.E.2d 135, 141 (1978); see also People v. Kubat, 447 N.E.2d 247, 275 (Ill. 1983) (finding that a prospective juror's use of phrases during voir dire, such as "I don't think" or "I don't know" is not necessarily indicative of doubt and "a venireman [is not expected] to express himself with meticulous preciseness . . .").  To determine a prospective juror's qualifications to reach a fair and impartial verdict, the trial court must consider the totality of a juror's responses to voir dire, including the manner in which the prospective juror responds as well as the content and substance of the response.  See Vinson

- 8 -

v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 176 (1999) (citations omitted).

In the case at bar, the record shows that Mitchell advised the court that she had seen news reports about the shooting. The news reports she read raised questions about the reason Martin and Williams were carrying a gun on the evening in question. When further questioned, Mitchell informed the trial court that she could set aside any concerns and decide the case based on the law and the evidence presented. The court found that any hesitation with which Mitchell answered the inquiries regarding her ability to be fair and impartial to be a reflection of her effort to answer complicated questions truthfully. The court specifically found that Mitchell's answers did not reflect an inability to be impartial. Because the trial court was in a unique position to assess the prospective juror's responses, we find no abuse of discretion in its determination that Mitchell could render a fair and impartial verdict in the case.

## II.  Jury Instructions

Martin further contends the trial court erred in refusing to give the jury an instruction on voluntary manslaughter, unlawful wounding, and unlawful shooting at an occupied vehicle on the ground that the facts support a finding that he acted in the heat of passion and in the absence of malice. We disagree.

Jury instructions are properly refused if not supported by more than a scintilla of evidence. Commonwealth v. Donkor, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998). On appeal, when the issue is a refused jury instruction, "[the evidence is viewed] in the light most favorable to the proponent of the instruction." Lynn, 27 Va. App. at 344, 499 S.E.2d at 4-5 (citation omitted). "'A jury instruction, even though correctly stating the law, should not be given if it is not applicable to the facts in evidence.'" Arnold v. Commonwealth, 37 Va. App. 781, 787, 560 S.E.2d 915, 919 (2002) (quoting Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988)).

To reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation. Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986) (citing Martin v. Commonwealth, 184 Va. 1009, 1016-17, 37 S.E.2d 43, 46 (1946)). "Heat of passion excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection." Graham v. Commonwealth, 31 Va. App. 662, 671, 525 S.E.2d 567, 571 (2000).

We find the record in this case does not support Martin's argument that the court erred in refusing his proffered instructions. The evidence fails to support Martin's contention that he shot in the "heat of passion" and without reflection because he was afraid or angry. Instead, the evidence shows

- 10 -

that he acted in a calculated and purposeful manner.  In response to his observation that someone in Hymes's car was pointing a gun at his companion Williams's head, Martin shot his gun in the air one time "in order to make them put the gun down."  Thereafter, he shot two more times, until someone in Hymes's car fired at Williams, at which point he fired all the shots in his clip.  When Martin spoke to the police about the shooting, he stated that the three men "shouldn't have messed with us"; the statement reflects deliberation and intent, rather than the "heat of passion."

Moreover, the evidence in the record shows that there was reasonable opportunity for Martin to cool.  His conduct in shooting the victim, therefore, cannot be attributed to the heat of passion.  See Miller v. Commonwealth, 5 Va. App. 22, 25, 359 S.E.2d 841, 842 (1987).  Martin and Williams stated they were the first to leave the skating rink and the first to enter the car to drive away.  By the time the shooting incident occurred, sufficient time had passed for the provocation caused by the incident, if any existed, to cool.  In short, the evidence fails to support the conclusion that Martin was "rendered deaf to the voice of reason." Canipe v. Commonwealth, 25 Va. App. 629, 645, 491 S.E.2d 747, 754.[1]

---

[1] Martin further contends the trial court erred in refusing a jury instruction on the lesser offenses of attempted unlawful wounding and unlawfully shooting into an occupied vehicle, on the ground that there was evidence of "heat of passion."

Martin also contends the trial court erred in refusing to instruct the jury that he acted in self-defense.[2]  His contention is without merit.  Martin offered the following justifiable homicide instruction:

> If you believe that the defendants were without fault in provoking or bringing on the difficulty, and if you further believe that the defendants reasonably feared, under the circumstances as they appeared to them, that they were in danger of being killed or that they were in danger of great bodily harm, then the killing was in self-defense, and you shall find the defendants not guilty.  The defendants must be totally free from fault, and must not have even remotely contributed to the cause of the difficulty.

To warrant an instruction on the theory of justifiable homicide, the defendant must be "totally free" from fault and must not have "even remotely" contributed to the affray, as noted in the proposed instruction.  If the accused is "even slightly at fault at creating the difficulty leading to the necessity to kill, the killing is not justifiable homicide."  Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (internal quotations and citations omitted).  After Williams was knocked down, Martin admitted that he approached Hymes and threatened him.  Martin was therefore not "totally

---

Because we find, for the reasons set forth in this opinion, that there was not a scintilla of evidence to support a "heat of passion" instruction, we reject Martin's contention.

[2] Martin's proffered instruction on excusable homicide was granted.

free from fault" and was not entitled to the justifiable homicide instruction.

Finding no error in the trial court's decision, we affirm Martin's convictions.

<u>Affirmed.</u>