OF APPEALS OF VIRGINIA

Present: Judges Annunziata, Frank and Senior Judge Bray
Argued at Chesapeake, Virginia


AUDRY LAWRENCE WILLIAMS, III

                                    MEMORANDUM OPINION[*] BY
v.   Record No. 0552-02-1        JUDGE ROSEMARIE ANNUNZIATA
                                         APRIL 8, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                    Christopher W. Hutton, Judge

        Peter S. Economou (Weisbrod & Phillips, on
        brief), for appellant.

        Amy L. Marshall, Assistant Attorney General
        (Jerry W. Kilgore, Attorney General, on
        brief), for appellee.


    Audry Lawrence Williams, III, appellant, appeals his

conviction by jury as a principal in the second degree of

second-degree murder, shooting into an occupied vehicle,

discharging a firearm from a vehicle, three counts of attempted

maiming, and four counts of use of a firearm in the commission

of a felony. He cites as grounds for appeal the trial court's

error 1) in denying his request that the jury be instructed on

manslaughter and 2) in denying his request to instruct the jury

on attempted unlawful wounding and unlawfully shooting into an

occupied vehicle. For the reasons that follow, we affirm.

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On appeal, when the issue is a refused jury instruction, we view the evidence in the light most favorable to Williams, the proponent of the instruction.  Lynn v. Commonwealth, 27 Va. App. 336, 344, 499 S.E.2d 1, 4-5 (1998).  So viewed, the record shows that an altercation occurred on the evening of March 2, 2001 that resulted in the killing of a fourteen-year-old bystander, Stephanie McSweeney.  On the evening in question, roommates, Orrien Hymes, Frank Massey and Brian Bennett went to the Plaza Roller Skating Rink in Hampton.  Massey, who was skating "pretty fast," accidentally bumped into Williams and knocked him to the floor of the rink.  Massey continued skating, unaware that he had knocked down another skater, but Hymes, skating ten feet behind Massey, stopped to make sure Williams was not injured.

Williams was "pretty hot about being knocked down" and began screaming at Hymes.  Williams's friend, Kevin Martin, joined them and began exchanging words with Hymes, stating "You don't know who you're messing with" and making "threatening gestures."  Massey skated around the rink and returned to the place where he had knocked Williams down.  He and Hymes tried to apologize, but "[Williams] took it as we were threatening him."  Massey and Hymes decided to keep skating, but Martin "kept coming up at [them]," and followed them around the rink while they skated.  After a subsequent encounter between Hymes, Martin and Williams, described by Bennett as a "struggle," the three roommates decided to leave the rink.

The hostilities continued in the parking lot. As Hymes and Massey walked into the lot and toward Hymes's car, Martin, accompanied by Williams, continued to threaten Massey and Hymes, stating "We are going to get you." Hymes testified that "[i]t was possible [Massey] was making threats" to Williams and Martin. Upon reaching his car, Hymes picked up a black plastic toolbox, held it up and said to Martin and Williams, "We got something in this box that will take care of you." Martin responded that he had something in his car that would take care of Hymes, walked toward Williams's car, entered the car and drove toward the exit. The cars of each group arrived at the exit at roughly the same time. As each waited to pull out of the lot into traffic, Williams's car stalled, and Hymes and Massey saw Martin reach for something under the front seat.

As Hymes sped away, he and his two roommates, Bennett and Massey, heard gunfire, and Bennett saw Martin firing at them. Massey saw "somebody grab their chest" and fall down and hit the ground. The victim was fourteen-year-old Stephanie McSweeney, who was crossing the street to use a pay phone. McSweeney died from a single gunshot wound to her chest.

Martin was arrested the next morning and questioned about the shooting. He stated that he did not mean to shoot McSweeney, but believed that one of the bullets he fired hit her "because [he] was shooting that way."

<u>Jury Instructions</u>

On appeal, Williams contends the trial court erred in refusing to instruct the jury on voluntary manslaughter, unlawful wounding, and unlawful shooting at an occupied vehicle. He contends that the evidence, viewed in the light most favorable to him, supports a finding that he acted in the heat of passion and in the absence of malice. We disagree.

Jury instructions are properly refused if not supported by more than a scintilla of evidence. <u>Commonwealth v. Donkor</u>, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998). "A jury instruction, even though correctly stating the law, should not be given if it is not applicable to the facts in evidence.'" <u>Arnold v. Commonwealth</u>, 37 Va. App. 781, 787, 560 S.E.2d 915, 919 (2002) (quoting <u>Darnell v. Commonwealth</u>, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988)). We view the evidence in the light most favorable to Williams, the proponent of the instruction. <u>Lynn</u>, 27 Va. App. at 344, 499 S.E.2d at 4-5.

To reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation. <u>Barrett v. Commonwealth</u>, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986) (citing <u>Martin v. Commonwealth</u>, 184 Va. 1009, 1016-17, 37 S.E.2d 43, 46 (1946)). "Heat of passion excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse

- 4 -

without conscious reflection." Graham v. Commonwealth, 31 Va. App. 662, 671, 525 S.E.2d 567, 571 (2000).

We find the record in this case is devoid of provocation evidence. Specifically, the evidence fails to support the conclusion Williams urges us to accept: that Martin shot in the heat of passion, without reflection, due to fear or anger.

Williams was convicted as a principal in the second degree, having been "present, aiding and abetting [Martin in the commission of the crime]" and having "intended his . . . words, gestures, signals, or actions to in some way encourage, advise, urge, or in some way help [Martin] committing the crime to commit it." McGill v. Commonwealth, 24 Va. App. 728, 733, 485 S.E.2d 173, 175 (1997). The Commonwealth need only show, therefore, that Williams was guilty of some overt act in furtherance of the crime. Augustine v. Commonwealth, 226 Va. 120, 124, 306 S.E.2d 886, 889 (1983). Because Williams did not shoot the victim, the Commonwealth was not required to prove Williams acted with malice in loading his gun, permitting Martin to use his gun, and driving the car as Martin shot at Hymes's vehicle. Convicted as a principal in the second degree, Williams's intent is irrelevant to the issue of his guilt. See Hunt v. Commonwealth, 25 Va. App. 395, 403-04, 488 S.E.2d 672, 677 (1997) (finding defendant was not entitled to a voluntary manslaughter instruction where his actions did not kill the

victim and, therefore, whether he acted in the heat of passion was irrelevant).  Therefore, under the facts of this case, the trial court did not err when it refused to give a heat of passion voluntary manslaughter instruction.[1]

To the extent Williams premises his contention of error on the trial court's refusal to give a voluntary manslaughter instruction concerning codefendant Martin, we find there is not a scintilla of evidence to support the instruction.  The record shows that Martin did not act in the heat of passion.

First, although there was an argument in the parking lot between the parties, words alone are never sufficient to constitute heat of passion.  Canipe v. Commonwealth, 25 Va. App. 629, 645, 491 S.E.2d 747, 754 (1997); see also McCoy v. Commonwealth, 133 Va. 731, 739, 112 S.E. 704, 707 (1922) ("[T]he

_____

[1] The Commonwealth contends the issue of whether the trial court erred in refusing to give a heat of passion instruction is barred procedurally under Rule 5A:18 because the appellant failed to make clear to whom the instruction applied.  The Commonwealth contends that, because the defendants failed to inform this Court whether the instruction applied to Williams, Martin or both, Williams is barred from raising the issue on appeal.  See Rule 5A:18; see also Lee v. Lee, 12 Va. App. 512, 516, 404 S.E.2d 736, 738-39 (1991) (en banc).  We are not persuaded by this argument.  The record shows that the heat of passion instruction was to apply to both defendants.  Ruling on the instruction, the trial judge referenced both defendants and stated "[t]he first issue is whether or not these defendants are entitled to an instruction of the lesser included offense of voluntary manslaughter."  The judge specifically noted that "the defendants [sic] appellate rights, should they be necessary to be invoked, are fully preserved in this area" and "To that ruling, I note the exception of both defendants."  Thus, we find the issue was properly preserved.

law is so tender in its regard for human life that it does not permit a man to defend himself against the charge of murder . . . unless his victim has done something more than to merely offer him a verbal insult.").  In addition, the fact that Hymes knocked Williams down accidentally while skating at the rink would not render a reasonable person "deaf to the voice of reason."  Canipe, 25 Va. App. at 645, 491 S.E.2d at 754.  In any event, the facts belie a contention to the contrary.  By Williams's own testimony, Martin was "all right," stating to Williams "[Y]eah, them guys talking a lot of junk but I ain't worried about it."

Second, Martin told Detective Thurman Clark that he did not shoot directly at the car; he shot in the air once "to make them put the gun back down," and then he shot two more times. The conduct described evinces reflection and deliberate, purposeful action, not one borne out of the heat of passion.

Third, the events that occurred while the parties were driving from the parking lot were likewise insufficient to warrant the heat of passion instruction.  According to Martin, someone from Hymes's car pointed a gun at Williams's head, not at him.  Therefore, assuming arguendo that act constituted provocation, it was directed at Williams, not Martin, the individual who shot the gun.

Finally, the evidence in the record demonstrates that there was reasonable opportunity for Martin to cool.  His conduct in

shooting the victim, therefore, cannot be attributed to the heat of passion.  Miller v. Commonwealth, 5 Va. App. 22, 25, 359 S.E.2d 841, 842 (1987).  Martin and Williams stated they were the first to leave the skating rink and the first to enter the car to drive away.  By the time the shooting incident occurred, sufficient time had passed for the provocation caused by the incident, if any existed, to cool.  In short, the evidence fails to support the conclusion that Martin was "rendered deaf to the voice of reason."  Canipe, 25 Va. App. at 645, 491 S.E.2d at 754.[2]

For these reasons, we hold that the trial court did not err in refusing Williams's heat of passion instruction, and we affirm the decision of the trial court.

Affirmed.

---

[2] Williams further contends the trial court erred in refusing a jury instruction on the lesser offenses of attempted unlawful wounding and unlawfully shooting into an occupied vehicle, on the ground that there was evidence of "heat of passion."  Because we find, for the reasons set forth in this opinion, that there was not a scintilla of evidence to support a "heat of passion" instruction, we reject Williams's contention.