DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ADRIANA RODRIGUEZ,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D11-1534

[August 26, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Stephen A. Rapp, Judge; L.T. Case No. 502009CF000335 BXXMB.

Richard B. Barkin and Ondina Felipe of the Law Office of Richard B. Barkin, Boca Raton, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

STEVENSON, J.

Adriana Rodriguez appeals her convictions for first-degree murder and kidnapping. Because the trial court erred by not giving the Defendant's requested jury instructions on the defenses of independent act and duress, we reverse the first-degree murder conviction.

*Background*

Maciel Videla was murdered as part of a plot by several drug dealers to make him "permanently deaf and blind" for snitching. His body was found in a canal on December 12, 2008. His throat had been slashed and he had been stabbed multiple times by Diego Nunez ("Yogi").

The Defendant was the victim's girlfriend. On the night of the murder, she persuaded him to come to a bar and then called Yogi to let him know that the victim had arrived. Yogi and three others drove to the bar in two separate cars. The first car pulled into the parking lot while the second car stayed out of sight.

As per "the plan," the Defendant escorted the victim out of the bar to the parking lot to meet the first car. The victim knew both men in the car and voluntarily got into the back seat. Alfredo Gomez, the passenger, climbed into the back seat with him and draped an arm across his shoulder as they drove out of the parking lot.

The cars drove west to Highway 441 and stopped at the edge of a canal in a remote location. Gomez took the victim out of the car, pinned his arms behind his back, and held him down on his knees. Yogi emerged from the second car, strode up from behind, slit the victim's throat and then stabbed him multiple times in the back.[1]

The Defendant confessed in a taped statement which was played for the jury that her role was to bring the victim out of the bar and walk him to the waiting car. It is unclear from her statement what she knew about Yogi's plan. She said she called Yogi from the parking lot after the cars drove off because she thought "they probably were beating [the victim] up in the car before they went off" and she wanted to find out what was happening since "they [stayed] there for a long time. *And I'm over here wondering, what are you guys doing. They left. They went over there to 441 but they didn't tell me what they did or nothing.*"

After the victim was killed, Yogi gave the Defendant details of the murder, and she went with the group to dispose of bloody clothes and the knife. During her confession, she told the officer multiple times that she was scared and that she participated only because Yogi had threatened her life and the lives of her family members.

*Procedural History*

The Defendant and three others were indicted for first-degree murder and kidnapping. A fifth co-conspirator became a witness for the State and was not charged. Yogi and another co-conspirator were indicted, but absconded to Mexico. The Defendant and Alfredo Gomez were tried as co-defendants with separate juries.

The State proceeded against the Defendant on the kidnapping count and both theories of first-degree murder—premeditated murder and felony murder. Before trial, counsel for the Defendant submitted a Request for Special Jury Instructions, asking the trial court to instruct the jury on the

---

[1] A more detailed discussion of the murder is set forth in *Gomez v. State*, 155 So. 3d 1184, 1186 (Fla. 4th DCA 2014).

defenses of independent act and duress. During the charge conference, counsel conceded that duress is not a defense to premeditated murder, but argued that the duress instruction should be given as a defense to felony murder. He argued that the Defendant was entitled to the independent act instruction as a defense to all charges, including first-degree murder. The trial court refused to give either instruction as a defense to first-degree murder, but agreed to give both instructions as defenses to second-degree murder, manslaughter, kidnapping, and false imprisonment.

*Standard of Review*

The trial court's refusal to give a requested jury instruction is reviewed for abuse of discretion. "'[T]he trial judge's discretion is fairly narrow because a criminal defendant is entitled, by law, to have the jury instructed on his theory of defense if there is *any* evidence to support his theory and the theory is recognized under Florida law.'" *Gomez v. State*, 155 So. 3d 1184, 1188 (Fla. 4th DCA 2014) (quoting *Palmore v. State*, 838 So. 2d 1222, 1223 (Fla. 1st DCA 2003)).

The standard of review as to *the propriety* of a special jury instruction is *de novo*. *Rockmore v. State*, 140 So. 3d 979, 984 (Fla. 2014) (citing *Butler v. State*, 493 So. 2d 451, 453 (Fla. 1986)).

*Independent Act Instruction as a Defense to First-Degree Murder*

Appellant argues that the trial court erred in refusing to give the independent act instruction as a defense to first-degree murder. Appellant notes that the trial court gave the instruction as a defense to the kidnapping, false imprisonment, second-degree murder, and manslaughter charges and that the court's failure to give the instruction as a defense to first-degree murder was "illogical." The State agrees that there is no "logical explanation regarding [why] an independent act instruction would apply to the lesser-included offenses of first-degree murder but not to first-degree murder itself," but argues that the Defendant was not entitled to the instruction because the victim's murder was "a natural and foreseeable culmination of the motivations for the original kidnapping." *Parker v. State*, 458 So. 2d 750, 753 (Fla. 1984).

The standard jury instruction on independent act states:

> If you find that the crime alleged was committed, an issue in this case is whether the crime of (crime alleged) was an independent act of a person other than the defendant. An

independent act occurs when a person other than the defendant commits or attempts to commit a crime
1. which the defendant did not intend to occur, and
2. in which the defendant did not participate, and
3. which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.

Fla. Std. Jury Instr. (Crim.) 3.6(l).

"The 'independent act' doctrine arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, 'which fall outside of, and are foreign to, the common design of the original collaboration.'" *Ray v. State*, 755 So. 2d 604, 609 (Fla. 2000) (quoting *Dell v. State*, 661 So. 2d 1305, 1306 (Fla. 3d DCA 1995)). "Where there is evidence from which a jury could determine that the acts of the co-felon resulting in murder were independent from the underlying felony, a defendant is entitled to an independent act instruction." *McGee v. State*, 792 So. 2d 624, 626 (Fla. 4th DCA 2001). "[T]he act is said to be 'independent' not only because it is committed by another person, but because it is independent of the common scheme or design to commit a felony." *Williams v. State*, 34 So. 3d 768, 771–72 (Fla. 2d DCA 2010) (discussing the origin of the independent act instruction and its relationship to the felony murder doctrine).

Here, there was evidence supporting the Defendant's independent act theory of defense. The Defendant stated that she did not know what the co-felons were doing when they took the victim into the car, and she thought they were beating up the victim. Two other witnesses for the State testified that they did not know Yogi planned to kill the victim despite hearing that he intended to make the victim "permanently deaf and blind."

Because there was *some* evidence supporting the Defendant's theory of defense, the trial court properly gave the independent act instruction as a defense to the kidnapping, false imprisonment, second-degree murder, and manslaughter charges. However, the trial court committed reversible error when it refused to give the independent act instruction as a defense to first-degree murder. *Garcia v. State*, 88 So. 3d 394, 404–05 (Fla. 4th DCA 2012).

*Duress as a Defense to Felony Murder*

We also find merit in Appellant's argument that the trial court erred in refusing to give the duress instruction as a defense to felony murder.

4

It is undisputed that "duress is not a defense to intentional homicide because 'duress will never justify the killing of an innocent third party.'" *Henry v. State*, 613 So. 2d 429, 432 n.6 (Fla. 1992) (quoting *Wright v. State*, 402 So. 2d 493, 498 (Fla. 3d DCA 1981)). In *Wright*, the Third District Court of Appeal discussed whether duress can be a defense to felony murder:

> Wright was charged with and defended against first degree murder by premeditated design, which, of course, involves an intent to kill. *Where duress is offered as a defense to first degree murder under a felony murder charge, a different question is presented, since duress is a recognized defense to the underlying felony, and the rationale of the rule prohibiting the duress defense in the crime of homicide appears inapplicable.* We need not decide this question in the present appeal.

402 So. 2d at 498 n.8 (emphasis added and citations omitted).

While several of our sister courts have raised the issue, none have reached the merits. *Salas v. State*, 972 So. 2d 941, 956 (Fla. 5th DCA 2007) (the defendant argued he was entitled to the duress instruction on the underlying felony of burglary; however, the court did not reach the issue, finding that the defendant had not established the elements of duress); *Clark v. State*, 861 So. 2d 111, 112 (Fla. 3d DCA 2003) (the court, "assuming without deciding that duress can be a defense to a felony murder charge," found "there was no competent evidence of duress"); *Chestnut v. State*, 505 So. 2d 1352, 1354 (Fla. 1st DCA 1987) (Ervin, J., concurring and dissenting) (finding the defendant did not establish one of the elements of duress, stating "I see no need to decide whether the defense of duress is applicable to the offense of felony-murder").

Appellant urges this court to adopt the reasoning of the Maryland Court of Appeals as stated in *McMillan v. State*, 51 A.3d 623 (Md. 2012). There, the defendant was convicted of felony murder. While the underlying felony was robbery, he was not separately charged with that offense. Maryland's highest court reversed the conviction, finding duress was a defense to felony murder.

> "At common law, the rationale for barring the duress defense in a prosecution for murder was that a person 'ought rather to die himself than escape by the murder of an innocent.' 5 BLACKSTONE'S COMMENTARIES 30. This rationale

disappears when the sole ground for the murder charge is that the defendant participated in an underlying felony, under duress, and the defendant's co-felons unexpectedly killed the victim, thereby elevating the charge to felony-murder. We conclude that if duress would serve as a defense to the underlying felony, it is also available as a defense to a felony-murder arising from that felony, assuming the criteria for such a defense are otherwise satisfied."

*Id.* at 634–35 (quoting Maryland Court of Special Appeals).

Several other states also recognize the duress defense to a felony murder charge. *Arnold v. Commonwealth*, 560 S.E.2d 915, 918 (Va. Ct. App. 2002) (recognizing the felony murder exception to the general rule that duress is not available as a defense to murder); *State v. Hunter*, 740 P.2d 559, 569 (Kan. 1987) (addressing the issue of first impression and holding that where compulsion is a defense to an underlying felony so that felony is justifiable, compulsion is equally a defense to charges of felony murder); *Tully v. State*, 730 P.2d 1206, 1210 (Okla. Crim. App. 1986) (analyzing the history and theory behind prohibiting the defense and concluding that the "limitation to the duress defense is restricted to crimes of intentional killing, and not to felony-murder"). We find the preceding reasoning persuasive and hold that, where the trial court finds that a defendant has presented evidence to support a duress theory of defense to the underlying felony in a felony murder case, the defendant is entitled to the duress instruction as a defense to felony murder. At bar, because the trial court found that the Defendant was entitled to the duress instruction on the underlying kidnapping charge, she was also entitled to the duress instruction on the felony murder charge.

### *Conclusion*

We find that the trial court committed reversible error in denying the Defendant's requests for the independent act instruction as a defense to first-degree murder and the duress instruction as a defense to felony murder. Accordingly, we reverse the Defendant's first-degree murder conviction and remand for a new trial consistent with this opinion.[2]

*Reversed in part and remanded for a new trial.*

---

[2] Appellant makes two evidentiary arguments which may arise on re-trial (error in admission of statements of co-conspirators and error in admission of evidence of collateral crimes). We have considered the merits of these arguments and find the trial court did not abuse its discretion in admitting the disputed evidence.

CIKLIN, C.J., and GROSS, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***