792 So.2d 624 (2001)
Quincy McGEE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-2261.
District Court of Appeal of Florida, Fourth District.
August 22, 2001.
*625 Carey Haughwout, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Douglas J. Glaid, Assistant Attorney General, Fort Lauderdale, for appellee.
DELL, J.
Quincy McGee appeals his judgment of conviction for second-degree murder with a firearm and his sentence of life imprisonment with a three-year mandatory term. We reverse.
Appellant and his co-defendant were charged by information with first-degree murder. The State proceeded to trial on the theory that appellant was an aider and abettor to the felony-murder of Anthony Key, a/k/a "Fat Cat." Appellant gave the police two taped statements which were admitted at trial. In the first statement, appellant denied his involvement. In the second, he admitted that his first taped statement was untrue and agreed to tell the truth.
According to appellant, he had been friends with the co-defendant, Damien Daley, for one year. On September 21, 1998, appellant picked up Daley from Daley's girlfriend's house between 11:00 and 11:30 p.m., they smoked pot, and then took a joy ride. In Pompano, Daley told appellant that he wanted to find "Juice," with whom he had set up a robbery. After unsuccessfully seeking "Juice," Daley said he was going to "bust this robbery myself." Daley directed appellant to drive to a dope house and appellant complied. Once they arrived at their destination, Daley got out of the car and agreed to get some drugs for appellant, who gave him money. According to appellant, he backed his car into a parking space and waited for approximately 10-13 minutes, when he heard gunshots. When Daley returned, he got into the car and told appellant that Fat Cat had pulled a pistol, the two had gun play, and that he, Daley, was shot. Daley then directed appellant to look for "Juice" to get rid of the gun, and appellant again complied. When they found "Juice," Daley called him over and Juice took the gun. According to appellant, the first time he was aware that Daley had a gun, was when he heard the shots.
At trial, State's witness Yvonne Elliott testified that she saw Fat Cat arguing with a man she did not know. After Fat Cat told the man that he had nothing to "give up," a third voice from the side of Fat Cat's house said, "Pop that bitch." She *626 did not see the person who made the statement. Ms. Elliott later identified Daley from a photographic lineup. A second witness testified that he awoke to gunshots, looked out of his front window, and saw a car with its brake lights on and its engine running, backed into a parking space. Later, a man hurried into the car and the car sped out of the parking spot and headed south. The witness identified the vehicle as appellant's. When appellant's car was stopped at 1:30 a.m. by a Pompano Beach police officer, appellant told the officer that Daley was his friend and that he had picked him up on I-95 and was trying to get him to a hospital.
Appellant raises five points on appeal. Because his argument that the trial court erred when it denied his request for an independent act instruction is dispositive, we will not discuss his remaining points on appeal. We agree with appellant's argument that he was entitled to his requested independent act instruction because there was evidence in the record to support it, and hold that the trial court erred when it denied appellant's request for such an instruction.
In Ray v. State, 755 So.2d 604 (Fla. 2000), the supreme court summarized the law as follows:
The "independent act" doctrine arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, "which fall outside of, and are foreign to, the common design of the original collaboration." Dell v. State, 661 So.2d 1305, 1306 (Fla. 3d DCA 1995)(quoting Ward v. State, 568 So.2d 452 (Fla. 3d DCA 1990)). Under these limited circumstances, a defendant whose cofelon exceeds the scope of the original plan is exonerated from any punishment imposed as a result of the independent act. Id. See also Parker v. State, 458 So.2d 750 (Fla.1984).
Id. at 609 (emphasis supplied). Where there is evidence from which a jury could determine that the acts of the co-felon resulting in murder were independent from the underlying felony, a defendant is entitled to an independent act instruction. See Bryant v. State, 412 So.2d 347 (Fla. 1982).
The standard jury instruction, 3.04(h), Independent Act, provides:
If you find that the crime alleged was committed, an issue in this case is whether the crime of (crime alleged) was an independent act of a person other than the defendant. An independent act occurs when a person other than the defendant commits or attempts to commit a crime.
Elements
1. which the defendant did not intend to occur, and
2. in which the defendant did not participate, and
3. which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.
If you find the defendant was not present when the crime of (crime alleged) occurred, that does not, in and of itself, establish that the (crime alleged) was an independent act of another.
If you find that the (crime alleged) was an independent act of [another] [(name of individual)], then you should find (defendant) not guilty of the crime of (crime alleged).
In re Standard Jury Instructions in Criminal Cases (97-1), 697 So.2d 84, 96 (Fla.1997).
In Rodriguez v. State, 571 So.2d 1356 (Fla. 2d DCA 1990), there was evidence that the appellant's participation in an *627 armed robbery did not include any intent to shoot a store clerk, but that his codefendant, who alone entered the store, committed the murder as a "spiteful act" rather than to eliminate a witness. The court held that the appellant was entitled to an independent act instruction because there was evidence presented at trial from which a jury could find that the shooting was "not committed in furtherance of or in the course of the joint felony." Id. at 1357.
Here, appellant's unrebutted statement to police was that his interest in driving Daley to Fat Cat's apartment was exclusively to have Daley obtain some marijuana for him. Moreover, the evidence showed that Fat Cat drew a gun when confronted by Daley and that they shot at each other. Appellant told police that he was unaware that Daley had a gun until he heard gunshots. Based upon eyewitness testimony, appellant remained in the car during Daley's entire confrontation with Fat Cat and it was an unidentified party who yelled, "Pop that bitch" from the side of Fat Cat's wall. One witness testified to seeing three persons near Fat Cat's house and did not identify appellant as one of them. Thus, there is evidence in the record from which the jury could conclude, if given the independent act instruction, that appellant did not plan or actively participate in the robbery, that the murder was Daley's independent act, and that appellant was not guilty of second-degree murder.
Accordingly, we reverse appellant's conviction for second-degree murder with a firearm and remand for a new trial.
REVERSED and REMANDED.
STEVENSON and GROSS, JJ., concur.