*1262
 
 COHEN, J.
 

 Jarrord Roberts appeals the denial of his requested jury instruction on the independent act doctrine. Finding no error, we affirm.
 

 Roberts was charged, as a codefendant, with the first-degree murder of Diana Miller, attempted first-degree murder of James Miller, robbery of Diana Miller and/or James Miller with a firearm, and kidnapping of Sheila Miller. The charges arose from events that transpired at the Villages in Marion County, Florida.
 

 Sheila Miller was residing with her parents, James and Diana Miller, when she invited Renaldo McGirth
 
 [1]
 
 to visit her while she convalesced from an automobile accident that left her confined to a wheelchair. Sheila had not seen McGirth for almost two years, and the purpose of the visit was vague. McGirth was purportedly bringing her a gift, the nature of which appeared to be illicit. McGirth arrived with Roberts, his cousin, and Theodore Houston.
 
 [2]
 
 Mrs. Miller greeted McGirth and all three went inside.
 
 [3]
 

 McGirth, Houston, and Sheila went into Sheila’s bedroom, while Roberts remained in the living room with Mrs. Miller. Once in the bedroom, McGirth produced a small handgun and instructed Houston to tape Sheila’s mouth and bind her hands with duct tape which the trio had purchased on the way to the Miller residence. Mrs. Miller was called into the room and pushed onto the bed, where either McGirth or Houston demanded money. When Mrs. Miller stated she only had $70 and rose to get the money, McGirth shot her in the chest. The wound was not fatal. Just prior to or just after Mrs. Miller was shot, Roberts gathered up the Millers’ wallets and car keys and handed them to McGirth. Mrs. Miller was then taken to the computer room in an unsuccessful attempt to order cell phones over the internet. Roberts brought Mr. Miller, who had been in the master bedroom, to Sheila’s bedroom. Mr. Miller was forced to lie on the floor, pinned by a foot on his head.
 

 Once the couple’s credit cards and a personal identification number were obtained, Mrs. Miller was placed on the floor of Sheila’s bedroom at Mr. Miller’s feet. Roberts removed Sheila from the home and put her in the Millers’ van. Inside the home, McGirth shot both Mr. and Mrs. Miller in the head as they lay on the bedroom floor. Mr. Miller survived; however, Mrs. Miller was not as fortunate. Bleeding from his head wound, Mr. Miller was able to exit the bedroom window and struggled to a neighbor’s home, from where the sheriffs office was summoned.
 

 McGirth, Roberts, and Sheila, ostensibly the victim of a kidnapping, left in the van. Houston followed in a silver Ford, the vehicle in which the trio had arrived. Proceeding to an automated teller machine (“ATM”), they withdrew $500, which McGirth divided into thirds. They then drove to a K-Mart in Belleview, Florida, where they once again unsuccessfully tried to locate a particular type of cell phone. Leaving the silver Ford in the K-Mart
 
 *1263
 
 parking lot, they travelled to a mall in Gainesville, Florida. Attempts to withdraw money at the mall ATMs and purchase items from stores were unsuccessful.
 

 At the Miller home, law enforcement secured the scene and began tracing the use of the Millers’ credit cards. A BOLO was issued for the van. Still driving the van, Roberts, McGirth, Houston, and Sheila returned to Marion County, stopping at a convenience store to purchase snacks. Spotted by law enforcement, McGirth led the deputies on a high speed chase. The chase ended after the van was slowed by the use of stop sticks and disabled by the use of a PIT maneuver,
 
 [4]
 
 which caused the van to roll. Houston was thrown from the van and pinned beneath it as it rolled; McGirth and Roberts exited the van and fled in opposite directions. Both were apprehended following a relatively short chase and with the assistance of canines. A search incident to Roberts’ arrest produced jewelry and medication from the Miller home, as well as Mr. Miller’s wallet. Roberts’ fingerprints were found on the Millers’ credit cards. A jury convicted Roberts of robbery with a firearm, and the lesser included charges of manslaughter and attempted manslaughter. He was acquitted of the kidnapping with a firearm charge relating to Sheila.
 

 At trial, Roberts’ request for a jury instruction on the independent act doctrine was declined.
 
 [5]
 
 Roberts contends this was error and that he was entitled to such an instruction because there was no evidence presented that there was a plan to rob or shoot anyone. He further contends that he did not know McGirth had a gun because it was hidden in McGirth’s backpack and he was not present when the shots were fired.
 

 The “independent act” doctrine applies “when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofel-on, “which fall outside of, and are foreign to, the common design of the original collaboration.’ ”
 
 Ray v. State,
 
 755 So.2d 604, 609 (Fla.2000) (quoting
 
 Dell v. State,
 
 661 So.2d 1305, 1306 (Fla. 3d DCA 1995)). Under this limited exception, a codefen-dant is not punished for the independent act of a cofelon who exceeds the scope of the original criminal plan.
 
 Id.
 
 However, when the codefendant was a willing participant in the underlying felony and the murder was committed to further the original criminal plan, the codefendant is not entitled to an independent act instruction.
 
 See id.; Lovette v. State,
 
 636 So.2d 1304, 1306 (Fla.1994).
 

 In
 
 Ray,
 
 the defendant and his cousin planned and committed an armed robbery of a liquor store. After fleeing the scene of the robbery, they encountered mechanical trouble with their getaway vehicle requiring them to pull off the road to fix the problem. A deputy arrived on the scene and a gun battle ensued resulting in the deputy’s death. At trial, Ray’s request for an “independent act” jury instruction was denied. The supreme court affirmed the denial, holding that Ray and his co-felon were not entitled to an independent act instruction because they were “partici
 
 *1264
 
 pants in the robbery and the murder resulted in forces they set in motion.”
 
 Id.
 
 at 609. The supreme court also found there was no evidence to support giving the instruction because the death occurred while they were fleeing the crime scene.
 
 Id.
 

 In
 
 Lovette,
 
 Lovette and his codefendant, Thomas Wyatt, escaped from a prison road gang in North Carolina. As they worked their way south, they stole ears, firearms and committed robberies. Arriving in Vero Beach, they committed an armed robbery of a Domino’s pizza store. While Lovette held the store manager at gunpoint until the store’s safe was opened, Wyatt took the other employees to the rear of the store. " Lovette stated he thought Wyatt was going to lock the employees in a closet, but instead Wyatt shot and killed them. Apparently based on this belief, Lovette denied culpability for the employees’ murders and requested an independent act jury instruction. The supreme court held the instruction was properly denied, stating:
 

 Although Lovette did not fire the shots that killed the victims, he was a willing participant in the armed robbery of the store. These killings lessened the immediate detection of the robbery and apprehension of the perpetrators and, thus, furthered the robbery. There is a causal connection between the robbery and the homicides, and both Lovette and Wyatt are guilty of felony murder. The evidence, therefore, did not support an independent act theory as to the murders, and the court did not err in refusing to instruct the jury on such theory.
 

 Id.
 
 at 1307;
 
 see also Williams v. State,
 
 987 So.2d 1 (Fla.2008);
 
 Mills v. State,
 
 875 So.2d 823 (Fla. 2d DCA 2004).
 

 In
 
 Cannon v. State,
 
 — So.3d-, 34 Fla. L. Weekly D136 (Fla. 1st DCA Jan. 12, 2009), the defendant planned a robbery and enlisted the help of her 13-year old cousin, Terrell Powell. Powell stole a gun and money to purchase ammunition. Cannon subsequently purchased the ammunition with the stolen money. The plan called for Powell to rob Aaron Wilson at his home. After waiting outside Aaron Wilson’s home, Powell observed a car park behind the home, its occupant exit the vehicle and enter the home. When that individual left the house to sit on the back steps, Powell approached and shot the victim when he swung a pipe at him. Powell then took the victim’s wallet and returned to Cannon’s home. The victim was Moses Wilson, Aaron Wilson’s brother.
 

 At trial, Cannon requested an independent act jury instruction because the murder of Moses Wilson was outside the scope of the plan to rob Aaron Wilson. Powell testified that the robbery plan never contemplated a murder and the only reason he shot Moses Wilson was because Moses had swung a pipe at him. In affirming the denial of the jury instruction the court stated, “Moreover, a shooting during an armed robbery is a foreseeable event,” citing
 
 Washington v. State,
 
 873 So.2d 1268 (Fla. 4th DCA 2004), and
 
 Perez v. State,
 
 711 So.2d 1215 (Fla. 3d DCA 1998).
 

 These cases indicate that an independent act instruction is inappropriate when the unrebutted evidence shows the defendant knowingly participated in the underlying criminal enterprise when the murder occurred or knew that firearms or deadly weapons would be used.
 
 [6]
 
 In contrast, cases reversing for the failure to
 
 *1265
 
 give the independent act instruction typically are devoid of one or the other.
 

 In
 
 Barfield v. State,
 
 762 So.2d 564 (Fla. 5th DCA 2000), three defendants planned to steal an ATM outside a convenience store. While two of the defendants loaded the ATM into their jeep, Zantiz went into the store brandishing a gun and committed a robbery. The Barfield brothers were unaware of Zantiz’s plan to commit a robbery or that he had a firearm. In reversing for failing to give the independent act instruction, this court discussed the inherent tension between the principal and independent act instructions.
 
 Id.
 
 at 566-67. Under the principal theory, one who helps another commit or attempt to commit a crime is responsible for all of the acts of her fellow codefendant if she had a conscious intent the criminal act be done and performed some act, by word or deed, that was intended to aid in inciting, causing, encouraging, assisting, or advising the other person to either commit or attempt to commit the crime. The independent act theory allows, under narrow circumstances, a limit to that broad scope of culpability.
 
 See also Flemmings v. State,
 
 838 So.2d 639 (Fla. 5th DCA 2003) (independent act instruction should have been given where evidence indicated Flemmings did not know of the robbery plan);
 
 McGee v. State,
 
 792 So.2d 624 (Fla. 4th DCA 2001) (reversing for failing to give an independent act instruction where defendant’s un-rebutted statement was that he drove co-defendant to victim’s house solely to buy him marijuana and he did not know of codefendant’s plan to rob or that he was armed).
 

 In applying these principles to the case at bar, we conclude the trial judge properly declined to give the independent act instruction. There was ample evidence that Roberts knew of and participated in the robbery of the Millers. He was present when the duct tape was purchased and knew McGirth not only was armed but shot Mrs. Miller. Roberts participated in stealing property from the Miller residence after Mrs. Miller was shot, assisted in moving Mr. Miller into Sheila’s bedroom, put Sheila in the van and, at the time of his arrest, was in possession of Mr. Miller’s wallet and medication. Furthermore, Mrs. Miller’s murder and the attempted murder of Mr. Miller undoubtedly lessened the immediate detection of the robbery. As in
 
 Lovette,
 
 Roberts was a willing participant in the robbery and the murders were in furtherance of that plan. Roberts was not entitled to an independent act instruction because there simply was no evidence to support it.
 

 AFFIRMED.
 

 ORFINGER and MONACO, JJ., concur.
 

 [1]
 

 . Sheila and McGirth were former friends who had a falling-out. Apparently this invitation was to rekindle their friendship.
 

 [2]
 

 . Houston’s trial was severed from Roberts' and McGirth’s, who were tried jointly.
 

 [3]
 

 . An undercurrent throughout the case was the extent, if any, of Sheila Miller’s involvement in the events. She had a history of drug and alcohol abuse and was supported financially, willingly by her mother and begrudgingly by her father. They had put her through substance abuse treatment, purchased at least two residences for her use, and paid all her living expenses. Despite this support, Sheila had stolen her mother’s credit cards in the past.
 

 [4]
 

 . Precision Immobilization Technique.
 

 [5]
 

 . It is unclear whether Roberts sought the independent act instruction for all the crimes with which he was charged, or just for the murder charge. The following discussion occurred between Roberts' counsel and the trial judge:
 

 THE COURT: Let me — let me narrow it somewhat, are you just asking for this instruction as to the robbery charge or the kidnapping?
 

 [DEFENSE COUNSEL]: And the murder.
 

 For purpose of this appeal, we assume the requested instruction related to all charges.
 

 [6]
 

 .
 
 But see Rodriguez v. State,
 
 571 So.2d 1356 (Fla. 2d DCA 1990) (killing done in spite of, not in furtherance of, or in course of joint felony), and
 
 Wagner v. State,
 
 921 So.2d 38 (Fla. 4th DCA 2006) (evidence codefendant in armed robbery intended to commit "suicide-by-cop”).