# Third District Court of Appeal

## State of Florida

Opinion filed September 17, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D12-2435
Lower Tribunal No. 07-26953-D
_____


**Ramiro Rodriguez,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Antonio Arzola, Judge.

Steven M. Swickle, for appellant.

Pamela Jo Bondi, Attorney General, and Jay E. Silver, Assistant Attorney General, for appellee.


Before SHEPHERD, C.J., and ROTHENBERG and SCALES, JJ.

ROTHENBERG, J.

Ramiro Rodriguez ("the defendant") appeals his convictions for manslaughter, attempted manslaughter, burglary with an assault or battery or while armed, conspiracy to commit burglary, kidnapping, and possession of a firearm during the commission of a felony. The defendant's primary arguments on appeal are that: (1) he was entitled to an independent act instruction on the manslaughter and attempted manslaughter counts; and (2) the trial court erred in denying his motion for a judgment of acquittal ("JOA") on the kidnapping count because the confinement was insufficient to support a conviction for kidnapping.[1] Because we conclude that no view of the evidence would support an independent act instruction and find that there was sufficient evidence to support the defendant's conviction for kidnapping, we affirm.

The defendant was involved in an altercation that resulted in the death of Erik Lopez ("Erik"), who suffered six gunshot wounds, and injury to Erik's wife, Olga Lopez ("Olga") (collectively, "the Lopezes"), who was shot in the leg. Although some of the facts are in dispute, the following facts are undisputed. In the early morning hours of August 5, 2007, Erik and Olga were at the defendant's home attending a party that involved substantial drinking and drug use, including cocaine. At some point during the partying, and without the defendant's

---

[1] Rodriguez also raised two other issues on appeal: that the trial court erred in not allowing him to replace his privately-retained counsel and that his trial counsel was ineffective on the face of the record. These arguments clearly lack merit, and we affirm the trial court's decisions on these points without discussion.

knowledge, the defendant's girlfriend, Lois Arroyo ("Lois"), engaged in sexual activity with Olga. When the defendant learned of the sexual activity, he became upset, and the Lopezes left the party.

After the Lopezes left the party, they called Lois and invited her to come to the Lopezes' home to participate in a sexual threesome with the Lopezes. When the defendant heard what was being proposed, he became enraged and told Erik on the phone that he was angry and that he was coming over "to talk." After soliciting the assistance of his son Ryan ("Ryan"), his friend Alain Llano ("Alain"), and Lois, the four of them (collectively, "the defendants") drove to the Lopez home in Alain's vehicle. The defendants were heavily armed with firearms, including at least three handguns and an AK-47 assault rifle.

Upon their arrival, the defendants entered the Lopez home. They duct taped Erik to a chair in his living room, and, according to Ryan, who testified at the defendant's trial, while they were attempting to duct tape Lois to a chair as well, Erik broke free from his bindings, pulled out a gun he had concealed in his waistband, and began firing. A firefight ensued. Erik and Olga were shot several times, and Alain was shot in the shoulder. Erik died at the scene from his gunshot wounds. All of the defendants were arrested and charged.

At trial, the State presented eyewitness testimony through two of the defendant's coperpetrators—the defendant's son Ryan and his friend Alain—as

well as Olga and several of the Lopezes' neighbors. Although the defendant did not testify, his pre-trial statement was introduced into evidence through one of the testifying detectives.

At the close of the State's case in chief, the defendant moved for a JOA on the kidnapping charge on the basis that the evidence did not establish that the confinement was "substantial." The trial court deferred its ruling, but ultimately denied the JOA motion at the close of the evidence. The trial court also denied the defendant's request that the jury be instructed on the independent act doctrine after concluding that there was no evidence to support such an instruction.

The trial court's failure to provide the jury with the defendant's requested jury instruction is the defendant's first argument on appeal. Although we review a trial court's decision to exclude a requested jury instruction for an abuse of discretion, Carpenter v. State, 785 So. 2d 1182, 1199-1200 (Fla. 2001); Martin v. State, 110 So. 3d 936, 938 (Fla. 1st DCA 2013), that discretion is substantially circumscribed when the instruction relates to a defendant's valid theory of defense, as the trial court must give the requested instruction if there is any evidence supporting the defendant's defense. Goode v. State, 856 So. 2d 1101, 1104 (Fla. 1st DCA 2003). Thus, we must determine whether there was any evidence introduced that would support the defendant's request for an independent act instruction.

4

"The 'independent act' doctrine arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, 'which fall outside of, and are foreign to, the common design of the original collaboration.'" Ray v. State, 755 So. 2d 604, 609 (Fla. 2000) (quoting Dell v. State, 661 So. 2d 1305, 1306 (Fla. 3d DCA 1995)). An independent act instruction is appropriate only when the actions of the cofelon who allegedly acted outside the scope of the original plan **were not foreseeable based on the actions a defendant set in motion**. See Bradley v. State, 33 So. 3d 664, 675 (Fla. 2010) ("[The independent act] defense cannot apply when death was a foreseeable result of the plan."); Jackson v. State, 18 So. 3d 1016, 1026 (Fla. 2009) (holding that the independent act instruction is warranted only when the cofelon's act is "outside of, and not a reasonably foreseeable consequence of, the common design or unlawful act contemplated by the defendant"); Johnson v. State, 36 So. 3d 170, 171-72 (Fla. 3d DCA 2010) ("We find that the trial court did not abuse its discretion to decline to instruct the jury on the independent act defense where, as here, death was a reasonably foreseeable consequence of the plan."). The case law on the independent act doctrine also establishes that "an independent act instruction is **inappropriate** when the unrebutted evidence shows the defendant knowingly participated in the underlying criminal enterprise when the murder occurred or knew that firearms or deadly weapons would be used." Roberts v. State, 4 So. 3d

5

1261, 1264 (Fla. 5th DCA 2009) (emphasis added) (discussing several cases interpreting the independent act doctrine); see also Diaz v. State, 600 So. 2d 529, 529-30 (Fla. 3d DCA 1992) (upholding the defendant's second degree murder conviction when one of his coperpetrators was shot and killed by their intended robbery victim by holding that the trial court did not err in refusing to provide the jury with an independent act instruction where the unexpected use of a gun during the commission of the attempted robbery was not an "intervening act" as a matter of law).

Although the eyewitness accounts of what happened varied somewhat from witness to witness, for purposes of our analysis on this point, we need only look to the testimony that is most favorable to an independent act instruction: the defendant's own statement. Based on the defendant's own version of the events, he was the mastermind and driving force behind the entire criminal enterprise. The defendant admitted to the police that: he went to the Lopez home to "scare" Erik; he solicited the help of Ryan, Alain, and Lois; he and his coperpetrators were heavily armed; and he brought duct tape with him to confine Erik to a chair. Thus, regardless of which version of the evidence is true—(1) Alain shot and killed Erik, as the defendant claims, or (2) the defendant shot and killed Erik, as all of the other witnesses testified and the physical evidence supports—the defendant still would not have been entitled to an independent act instruction because he orchestrated the

6

entire sequence of events. The defendant went to Erik's house to confront Erik armed with a firearm, and he brought Ryan, Lois, and Alain, who the defendant knew would be armed with firearms, to assist him in confronting and "scaring" Erik. Given these facts, it is hardly unforeseeable that violence would occur and that someone could be shot and/or killed during this armed confrontation. It was certainly reasonably foreseeable that when the defendant and his armed cohorts confronted Erik, duct taped Erik to a chair, and began to duct tape Erik's wife to a chair, that Erik would himself resort to violence to protect himself and his wife by any means available to him. Thus, even if we were to examine the testimony in the light most favorable to the defendant, the defendant was not entitled to an independent act instruction.

The defendant's second argument on appeal is that the trial court should have granted his JOA motion because the State did not present any evidence that the victim(s) had been sufficiently confined to warrant a kidnapping conviction. This argument reflects a misunderstanding of the law on kidnapping as well as the evidence introduced at trial.

Section 787.01(a), Florida Statutes (2007), provides as follows:

> (1)(a) The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
> 1. Hold for ransom or reward or as a shield or hostage.
> **2. Commit or facilitate commission of any felony.**

**3. Inflict bodily harm upon or to terrorize the victim or another person.**

4. Interfere with the performance of any governmental or political function.

(emphasis added). When a defendant is charged with kidnapping with the intent to facilitate the commission of a felony under subsection 787.01(1)(a)2, the State must also prove that the confinement was not "inconsequential or inherent in the nature of the felony [sought to be furthered by the kidnapping]." Faison v. State, 426 So. 2d 963, 966 (Fla. 1983) (quoting Harkins v. State, 380 So. 2d 524, 528 (Fla. 5th DCA 1980)); see also Frederick v. State, 931 So. 2d 967, 969 (Fla. 3d DCA 2006) (explaining the reasoning and holding of Faison).

This substantiality of confinement factor enunciated in Faison, however, is germane **only** when the charge of kidnapping is brought under subsection (a)2, where it is alleged that the confinement was with the specific intent to commit or facilitate the commission of another felony. See Perry v. State, 57 So. 3d 910, 912 (Fla. 5th DCA 2011) (noting that the case law clearly provides that the Faison test applies only when kidnapping is charged under section 787.01(1)(a)2).

In this case, the State charged the defendant in the alternative with kidnapping to facilitate the commission of a felony (specifically, aggravated assault) under subsection (a)2, and also with the intent to terrorize the victim under subsection (a)3. Because the facts of this case demonstrate a textbook example of kidnapping with the intent to terrorize the victim—the defendant admitted he

8

intended to scare Erik by duct taping him to the chair and pointing guns at him—we need not even address whether the confinement was inconsequential to support a kidnapping conviction under subsection (a)2.

Nonetheless, we briefly address the defendant's claim that the confinement of Erik was insufficient to support a conviction of kidnapping under subsection (a)2 as a matter of law. Specifically, the defendant argues that because Erik broke free from his bindings (he had been duct taped to a chair), his confinement was inconsequential.

In Ferguson v. State, 533 So. 2d 763, 764 (Fla. 1988), when addressing the three-prong test adopted in Faison, the Florida Supreme Court held that "[t]he duration of the confinement is not an integral part of the test even though it may bear on whether the confinement was slight or inconsequential." Rather, the issue is whether the initial confinement was **intended** to make the crime substantially easier to commit or substantially lessen the risk of detection. This determination "does not depend on the accomplishment of its purpose." Id.

The defendant admits that his intent in duct taping Erik to the chair was to "scare" Erik, and Ryan testified that the Defendant also attempted to duct tape Olga to another chair in furtherance of his intended purpose. Although the determination of whether the confinement of Erik was inconsequential was not dependent upon the success or accomplishment of the defendant's purpose, which

9

was to facilitate the commission of the defendant's aggravated assault upon Erik, the evidence established that the confinement did in fact accomplish the defendant's intended purpose:  to assault and terrorize Erik.  He so terrorized Erik that Erik broke free from his bindings, pulled out a gun, and began firing to protect himself and his wife.  Thus, under either of the theories charged, the evidence was sufficient to support the defendant's conviction for kidnapping.

Affirmed.